A99A0274. WOODALL v. RIVERMONT APARTMENTS LIMITED PARTNERSHIP et al.

(520 SE2d 741)

RUFFIN, Judge.

Reginald Woodall was shot in the leg during an armed robbery at Rivermont Apartments. Woodall sued Rivermont Apartments Limited Partnership, its general partner, Brown-Rivermont, Inc., and the property manager, AB Property Management, L.P., alleging that they negligently failed to keep the premises safe. The trial court partially granted defendants' motion in limine to exclude evidence of prior crimes and suspicious activity at the apartment complex. We granted Woodall's application for interlocutory review. For the reasons discussed below, we affirm the trial court's ruling in part and reverse in part.

The admissibility of evidence, including a ruling on a motion in limine, is a matter resting within the sound discretion of the trial court. Accordingly, we will not disturb the exercise of that discretion absent evidence of its abuse. See *Stewart v. State*, 210 Ga. App. 474, 476 (6) (436 SE2d 679) (1993). However, in determining whether the trial court has abused its discretion, we must consider our Supreme Court's admonition that

> the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care.

(Citation omitted.) *Andrews v. Wilbanks*, 265 Ga. 555, 556 (458 SE2d 817) (1995). Moreover, "[t]he Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value; evidence of doubtful relevance or competency should be admitted and its weight left to the jury." *Johnson v. State*, 236 Ga. App. 61, 65 (3) (b) (510 SE2d 918) (1999).

At about 8:00 p.m. on December 20, 1993, Woodall parked near the apartment complex's mailbox area and walked over to get his mail. The mailboxes were located next to the tennis courts, which were bordered by large bushes. As Woodall returned to his car, a man with a gun emerged from the bushes and told Woodall to "give it up." Woodall started to run toward his car, and the gunman shot him in the leg. The gunman demanded that Woodall give him his money and wallet, and Woodall did so. The gunman unsuccessfully attempted to steal Woodall's car, but fled from the scene on foot after a police officer appeared.

Prior to trial, Woodall discovered evidence of twenty separate property crimes that had occurred at the apartment complex in the previous year, including eight burglaries of apartment units, nine instances where cars in the parking lot were either broken into or stolen, and three instances where mailboxes at the apartment complex were broken into. In addition to these property crimes, there were two other incidents involving encounters by a resident or security guard with suspicious individuals. In granting defendants' motion in limine to exclude evidence of these incidents, the trial court examined each incident separately and concluded that each individual incident was not sufficiently similar to the attack on Woodall to render it admissible. The trial court also excluded certain internal reports of defendants referencing these property crimes. The court did not consider whether the *volume* of crime, alone or combined with other factors, affected the question of admissibility, but simply considered each prior incident separately. However, the court stated in its order that it had "misgivings that the jury will not have a fair and accurate picture of the condition of the Rivermont [Apartments] at the time of trial." The court denied defendants' request to exclude evidence relating to violent crimes occurring in the vicinity of the apartment complex.

1. In *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785-786 (482 SE2d 339) (1997), the Supreme Court noted that

[t]he general rule regarding premises liability is that a landlord does not insure tenants' safety against third-party criminal attacks, and that any liability from such attacks must be predicated on a breach of duty to "exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. A landlord's duty to exercise ordinary care to protect tenants against third-party criminal attacks extends *only* to *foreseeable* criminal acts. The difficulty arises in determining which criminal acts are foreseeable. . . . [T]he incident causing the injury must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers or tenants against the risk posed by that type of activity. In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. While the prior criminal activity must be substantially similar to the particular crime in question, that

> does not mean identical. What is required is that the prior incident be sufficient to attract the landlord's attention to the dangerous condition which resulted in the litigated incident. Further, the question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts.

(Citations and punctuation omitted; emphasis in original.) Id. The Supreme Court in *Sturbridge* expressly rejected the proposition that "a landlord's knowledge of prior criminal acts against property cannot establish the foreseeability of a brutal sex crime as a matter of law." Id. at 786. Thus, the Court held that the landlord's knowledge of two prior burglaries of unoccupied apartments created a triable issue of fact as to whether the landlord "should have reasonably anticipated the risk of personal harm to a tenant which might occur in the burglary of an occupied apartment." Id. at 787. In so holding, the Court noted that "the very nature of burglary suggests that personal injury may occur during the unauthorized entry into the dwelling house of another." Id. at 787, n. 1.

Eight months after its decision in *Sturbridge*, the Supreme Court again confronted the issue of whether crimes against property might make a risk of personal injury to a tenant foreseeable. In *Doe v. Prudential-Bache/A. G. Spanos Realty Partners, L.P.*, 268 Ga. 604 (492 SE2d 865) (1997), a tenant was robbed and raped after parking her car underneath her apartment building. Before this incident, a number of property crimes had occurred in the parking garage, including thefts of bicycles, thefts from automobiles, and vandalism. The Supreme Court held that these prior property crimes did not create a factual issue regarding whether the landlord could reasonably foresee that a violent sexual assault might occur on the premises. Id. at 606. The Court distinguished its recent decision in *Sturbridge*, stating that

> [f]irst, the "very nature" of the thefts and acts of vandalism committed in this case do not "suggest that personal injury may occur." Further, because the parking garage where the prior crimes occurred is a common area, used by all the tenants and their guests, there is only the potential for a tenant to confront a thief in an isolated situation, and, even if such an encounter occurs, there is always the possibility that the isolation could be brief. In contrast, a tenant encountering a burglar in the privacy of her apartment inevitably will be isolated with the intruder, and will have little chance of a third party interrupting the encounter. Finally, a tenant generally will have opportunities for escaping an iso-

lated encounter with a thief in a common area, but will not have similar opportunities when encountering a burglar in her apartment.

(Footnote omitted.) *Id.*

Thus, although *Sturbridge* rejected the proposition that the occurrence of property crimes may never render the occurrence of violent crimes foreseeable, the Court in *Doe* appears to have restricted the applicability of *Sturbridge*. *Doe* appears to establish the following principles: (1) a crime against property will make an act of violent crime foreseeable if the "very nature" of the property crime "suggest[s] that personal injury may occur"; and (2) if an individual who encounters someone committing such a property crime has "opportunities for escaping" the encounter, then the occurrence of the property crime, in and of itself, may not render it foreseeable that a violent crime will occur.

In this case, it does not appear that any of the property crimes, standing alone, would raise an issue of foreseeability under the standards set forth in *Sturbridge* and *Doe*. The trial court clearly believed that these cases required it to analyze each prior crime independently to determine its similarity to the attack at issue in this case, without reference to other crimes at the complex or other evidence placing the crimes in context. However, although the court stated that it believed its ruling was mandated by *Sturbridge* and *Doe*, it stated that it "has misgivings that the jury will not have a fair and accurate picture of the condition of the Rivermont [Apartments] at the time of trial."

Neither *Sturbridge* nor *Doe* specifically addresses whether evidence of a crime that, standing alone, would not raise an issue of foreseeability may be relevant when considered in light of other evidence. However, the Supreme Court has made it clear that the relevant question is whether the prior incidents are "sufficient to attract the landlord's attention to the dangerous condition which resulted in the litigated incident." *Sturbridge*, supra. In resolving that issue, the trial court is to "inquire into the location, nature and *extent* of the prior criminal activities and their likeness, proximity or *other relationship* to the crime in question." (Emphasis supplied.) *Id.* Thus, it does not appear that the Supreme Court intended to require a rigid, formalistic analysis of the factual similarity between various instances of criminal activity. So long as the occurrence of the prior crimes should "attract the landlord's attention to the dangerous condition which resulted in the litigated incident," the prior crimes are relevant to the issue of foreseeability. *Id.*

It is important to note that the essential question in a case of this kind is whether the defendant violated a duty to protect the

plaintiff from an unreasonable risk of harm. As Justice Sears noted in her concurrence in *Sun Trust Banks v. Killebrew*, 266 Ga. 109, 110 (464 SE2d 207) (1995),

> neither this Court nor the Court of Appeals has specifically held that knowledge of an unreasonable risk of criminal activity can only be created by the prior, actual occurrence of a crime. Instead, both this Court and the Court of Appeals have stated that knowledge of the unreasonable risk of criminal activity *"may"* be proven by prior similar incidents.

(Sears, J., concurring). In *Lau's Corp. v. Haskins*, 261 Ga. 491, 493 (1) (405 SE2d 474) (1991), the Supreme Court held that an issue of fact regarding the proprietor's duty was created by, among other things, evidence that the premises were in a "high crime" area. See also *Shoney's, Inc. v. Hudson*, 218 Ga. App. 171, 173-174 (2) (460 SE2d 809) (1995).

Where there are a small number of isolated criminal acts at a complex, the occurrence of such crimes may not indicate a risk of other types of crimes. However, where a complex has experienced a large volume of crime over a period of time, the *extent* of such crime may indicate fundamental problems with security at the complex, thus making a risk of violent crime more foreseeable. This is particularly so if the complex is located in an area with a high occurrence of violent crimes. Larry Talley, a security consultant testifying as an expert on behalf of the plaintiff, testified that if property crimes are left unchecked in an area, and if there is a lot of violent crime occurring nearby, it is predictable that the property crimes may escalate into more violent crimes. He noted that many large cities such as New York and Los Angeles have successfully attempted to control violent crime by taking steps to deter property crimes.

In this case, there was evidence that the area surrounding the Rivermont complex was experiencing an increase in violent crimes, particularly armed robbery. The trial court held that such evidence was admissible, and that it was up to the jury to decide whether such crime was likely to "spill over" to Rivermont. The court specifically held that "[t]he jury may decide that, given the secluded nature of the Rivermont, . . . it made a more attractive target to criminals." We believe this evidence that Rivermont was located in a high crime area is relevant to the question of whether the increase in property crimes at Rivermont should have placed defendants on notice of the risk of violent crime. Although the particular incidents of property crime were not identical to the robbery of Woodall, they were serious crimes, including burglary and automobile theft. There is evidence that defendants were concerned about the increase in crime, both at

Rivermont and in the surrounding area. Internal documents indicate that defendants contemplated "[i]mprovements such as installation of an access gate, burglar alarms and additional fencing," and hiring a patrol service "in an attempt to discourage the recent increase in crime in the area." One document notes that "[s]ecurity remains a concern for both prospective tenants and current residents. The installation of an access gate at the entrance to the property is preferred by those residents who have expressed a preference."

Given the fact that the area adjacent to the Rivermont complex was known as a high-violent crime area, and that defendants were concerned about security issues relating to the increase in crime, we believe that evidence of an increase in property crimes at the complex is relevant to whether defendants should have foreseen a risk of personal injury to their tenants from an attack such as the one on Woodall. In analyzing each prior property crime individually, without reference to any context, the trial court applied an overly rigid interpretation of the Supreme Court's decisions in *Sturbridge* and *Doe*. As discussed above, Georgia law "favors the admission of any relevant evidence, no matter how slight its probative value; evidence of doubtful relevance or competency should be admitted and its weight left to the jury." *Johnson*, supra. Because we cannot say that such evidence was inadmissible for any purpose, the trial court erred in granting defendants' motion to exclude evidence of the various property crimes and of defendants' knowledge of those crimes.

2. In addition to the various property crimes, the trial court excluded evidence relating to two separate incidents involving suspicious conduct. In one case, a resident told one of defendants' employees that another resident and her boyfriend had been approached by two "suspicious" persons with a blanket, and that the boyfriend "chased off" the two persons. The trial court, noting that the woman who was approached never reported the incident to the defendants or to the police and that there was no indication of what time of day the incident occurred, found that there was no evidence the incident was criminal in nature.

In another incident, a security guard, Officer Lawal, encountered an individual sitting in the mailbox area. Officer Lawal asked the man if he was a resident, and the man replied that he was visiting a resident but did not remember the apartment number. The man asked Lawal about the security at the complex. Lawal told the man he would have to ask management and asked him to leave the property. The man told Lawal he was "lucky that he was not prepared to do anything," and said that he would be back. Lawal subsequently learned that the other man was a security guard named Joe, employed by the same company as Lawal, who lived in the Rivermont apartment complex and worked at another complex. The trial court

concluded that this incident was not criminal in nature, but was simply a personality clash between two security guards, and that it did not raise an issue as to the foreseeability of the attack upon Woodall.

Because the evidence did not show that either of these two incidents involved criminal activity, we cannot say that the trial court abused its discretion in concluding that the incidents were not relevant in showing the foreseeability of the criminal attack on Woodall. Accordingly, the grant of the motion in limine is affirmed only with respect to these two incidents.

*Judgment affirmed in part and reversed in part. McMurray, P. J., concurs. Andrews, P. J., concurs in judgment only.*

DECIDED JULY 9, 1999.

*James A. Shea, Jr.,* for appellant.
*Barnes, Browning, Tanksley & Casurella, Michael K. Jablonski,* for appellees.