## A02A2161. HAND v. PETTITT.
(573 SE2d 421)

ELDRIDGE, Judge.

Herbert Lawrence Hand sued for battery and damages, both general and punitive, and for an injunction against trespass by Phillip Harold Pettitt for use of a road across Hand's land, which was shown as an easement on a subdivision plat of the land; Pettitt answered and counterclaimed for false arrest and false imprisonment by locking him in the property where there was a public easement on the road. The trial court granted Pettitt's motion for a directed verdict that all of the roads shown on the subdivision plat were public roads accessible to all subdivision landowners. On March 22, 2002, after a jury trial on May 29 through June 1, 2001, the trial court returned a judgment for Pettitt in the amount of $100. The judgment found that Talking Rock Falls Road, N.E., a subdivision road, was a public road, because the subdivider sold lots according to the recorded plat which showed the road and created an express easement. Finding no error, we affirm.

1. Hand contends that the trial court abused its discretion in denying his motion in limine regarding his prior and subsequent difficulties with Pettitt and with others regarding use of the road. We find that there was no abuse of discretion and that evidence of the prior and subsequent difficulties with Pettitt and others over use of the road was relevant and material to issues in this case.

On August 29, 1999, Hand found that Pettitt had gone through a gate on Hand's land and that Pettitt was on the construction site of Hoffstedter, a neighbor at the end of the road, and accused Pettitt of

trespassing, ordering him off the property. An altercation resulted between them, and Hand went back through and closed the gate, blocking the road. Pettitt ordered Hand to open the gate, and Hand refused, telling him to get out of the truck and open it himself. Pettitt testified that he was afraid of Hand because Hand had a reputation for violence; therefore, Pettitt drove through the closed gate, which gate flew open and knocked Hand into the culvert. This was the basis of Hand's battery action.

(a) At opening statements at the jury trial, Pettitt's counsel described Hand's prior and subsequent difficulties with Pettitt and with others regarding the use of the road; after opening statements, Hand's counsel moved for a motion in limine to exclude evidence of such prior and subsequent difficulties with Pettitt and also as to other people regarding the road. The motion sought a pre-trial ruling absolutely excluding such evidence rather than to temporarily exclude the evidence until a proper showing could be made as to relevance and materiality outside the presence of the jury. The jury had already heard counsel outline what he expected to show in this regard as to this expected evidence and how it constituted part of his defense and counterclaim; therefore, any harm had already occurred by the jury hearing the opening statement. Thus, Hand was too late in making a motion in limine to prevent the jury from being prejudiced by the injection of such information before them, and at most, a motion in limine would only have served to limit damage from such information being further presented to the jury on tender of such evidence. However, Hand brought the motion in limine for a pre-trial determination of the legal issue of admissibility under any theory of relevance.

The grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care, because it seeks to preclude by pre-trial evidentiary ruling on the admission of evidence without the trial court having any evidentiary foundation for the ruling in the context of the trial. *Homebuilders Assn. of Ga. v. Morris*, 238 Ga. App. 194, 195 (518 SE2d 194) (1999). Where the exclusion of evidence is required as a matter of law, the trial court does not abuse its discretion in granting a motion in limine. Id. at 197; *American Petroleum Products v. Mom & Pop Stores*, 231 Ga. App. 1, 7 (3) (497 SE2d 616) (1998). Thus, "[b]y its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." (Citation omitted.) *Andrews v. Wilbanks*, 265 Ga. 555, 556 (458 SE2d 817) (1995).

A motion in limine is a pretrial motion which may be used in two ways: 1) The movant seeks, not a *final* ruling on the admissibility of evidence, but only to prevent the mention by anyone, during trial, of a certain item of evidence or area of inquiry until its admissibility can be determined *during the course of the trial* outside the presence of the jury. 2) The movant seeks a ruling on the admissibility of evidence prior to trial. The trial court has an absolute right to refuse to decide the admissibility of evidence, allegedly violative of some ordinary rule of evidence, prior to trial. If, however, the trial court decides to rule on the admissibility of evidence prior to trial, the court's determination of [the] admissibility is similar "to a preliminary ruling on evidence at a pretrial conference" and it "*controls* the subsequent course of action, unless modified at trial to prevent manifest injustice." *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 285-6 (260 SE2d 20) (1979).

(Citations, punctuation and footnote omitted; emphasis in original.) *State v. Johnston*, 249 Ga. 413, 415 (3) (291 SE2d 543) (1982); see also *Andrews v. Wilbanks*, supra at 556. Where the evidence may be relevant and material if certain foundational facts are proven, the trial court does not abuse its discretion excluding such evidence until the proper foundation has been laid before the court to make such evidence relevant and create an issue of proof. Id.; *Jakobsen v. Colonial Pipeline Co.*, 237 Ga. App. 441, 446 (3) (514 SE2d 851) (1999) (trial court can modify a grant of a motion in limine); *Dept. of Transp. v. Wallace Enterprises*, 234 Ga. App. 1, 4 (6) (505 SE2d 549) (1998) (denied motion in limine). However, when admission of certain evidence is a matter of law instead of a mixed question of law and fact, the trial court does not abuse its discretion in granting a motion in limine where there are no circumstances under which disputed evidence is admissible. *Andrews v. Wilbanks*, supra at 556.

In this case, the motion was not to exclude the evidence until a foundation could be laid out of the presence of the jury during the trial of the case, because the motion was made following the opening statement of Pettitt in which the issue of such proposed evidence was injected before the jury already. Instead, the motion to exclude this evidence by motion in limine sought a legal determination that the evidence was not admissible under any circumstances. However, under certain circumstances, the disputed evidence as to Hand's course of conduct, habit, intent, and difficulty regarding Pettitt or others in similar circumstances to this case, as to Pettitt's intent, attitude, and state of mind, as impeachment of Hand, and as to the issue of easement for the road were admissible. "The Georgia rule

favors the admission of any relevant evidence, no matter how slight its probative value; evidence of doubtful relevance or competency should be admitted and its weight left to the jury." (Citation omitted.) *Johnson v. State*, 236 Ga. App. 61, 65 (3) (b) (510 SE2d 918) (1999); accord *Woodall v. Rivermont Apts. Ltd. Partnership*, 239 Ga. App. 36 (520 SE2d 741) (1999). Thus, where disputed issues of fact are involved, the trial court does not abuse its discretion in denying the motion in limine. *Woodall v. Rivermont Apts. Ltd. Partnership*, supra at 36. The trial court has an absolute right to refuse to decide the admissibility of evidence, allegedly violating some ordinary rule of evidence, prior to trial, because the evidence has not been tendered in the context of evidence already admitted, which may make the evidence admissible for certain purposes. *Thaxton v. Norfolk Southern R. Co.*, 239 Ga. App. 18, 25-26 (3) (520 SE2d 735) (1999) (trial court reserved ruling on evidence); *Orr v. CSX Transp.*, 233 Ga. App. 530, 531 (3) (505 SE2d 45) (1998) (same); *Locke v. Vonalt*, 189 Ga. App. 783, 785-786 (2) (377 SE2d 696) (1989) (same); *Morris v. Southern Bell Tel. &c. Co.*, 180 Ga. App. 145 (348 SE2d 573) (1986) (trial court reserved ruling on the evidence until offered during trial).

(b) Where the disputed evidence was admissible for any reason, the trial court did not abuse its discretion in admitting such evidence. *Johnson v. State*, supra at 65.

(i) *Similar transaction evidence*. As a general rule in all negligence actions, evidence of similar acts or omissions is not admissible. However,

> if proof of a similar accident or similar method of acting tends to prove some fact of the case on trial, the testimony falls within an exception — such as to show knowledge of the defect or causation or to rebut a contention that it was impossible for the accident to happen in the manner claimed. Independent testimony of other transactions has also been admitted to show the prior existence of a dangerous condition or hazardous situation.

(Citations and punctuation omitted.) *Gunthorpe v. Daniels*, 150 Ga. App. 113-114 (1) (257 SE2d 199) (1979). "Evidence of similar transactions is admissible to show [tortious] intent or motives. . . . However, in passing on the admissibility of similar transaction evidence, the trial court must determine whether the act on another and different occasion relates to the issue before the jury." (Citations omitted.) *Davenport v. Kutner*, 182 Ga. App. 467, 469 (1) (356 SE2d 67) (1987), rev'd on other grounds, *Kutner v. Davenport*, 257 Ga. 456 (360 SE2d 586) (1987). Similar transaction evidence is admissible "where a series of acts are so related that proof of one tends to prove the other

. . . [or the party's] statement is subject to contradiction by cross examination concerning similar cases." *Johnson v. Myers,* 118 Ga. App. 773, 774-775 (1) (165 SE2d 739) (1968). The grant of a motion in limine which excludes evidence of prior similar transactions or conduct is a reversible error constituting an abuse of discretion. *Cole v. Sheraton Atlanta Corp.,* 159 Ga. App. 439 (283 SE2d 668) (1981).

(ii) *Prior and subsequent difficulties between the parties.* "Evidence of a defendant's prior act toward the same victim, whether an assault, a quarrel, or a threat, is admissible as evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim." (Footnote omitted.) *Appling v. State,* 246 Ga. App. 556 (541 SE2d 129) (2000);[1] see also *Wall v. State,* 269 Ga. 506, 508-509 (2) (500 SE2d 904) (1998) (holding that such evidence was relevant).

(iii) *Victim's reputation for violence.* Where the defendant asserts a defense of justification or self-defense to assault and battery, the victim's reputation for violence and specific acts of violence is admissible. *Laster v. State,* 268 Ga. 172, 173-174 (2) (486 SE2d 153) (1997); *Chandler v. State,* 261 Ga. 402, 407 (3) (405 SE2d 669) (1991).

(iv) *Proof of the easement by use.* Hand testified that he owned the road and that any easement over the road had been abandoned by nonuse. OCGA § 44-9-6; *Central of Ga. R. Co. v. DEC Assoc.,* 231 Ga. App. 787, 789 (1) (501 SE2d 6) (1998) (abandonment by nonuse for over 25 years of an unrecorded written easement). Where the purchaser of land was allowed ingress and egress to the property and maintained the road during a period of six to eight years, he acquired an easement running with the land unless forfeited or abandoned by his successors in title. *Mathis v. Holcomb,* 215 Ga. 488, 489 (1) (111 SE2d 50) (1959). Thus, the testimony of not only Pettitt but others as to their use of the road was relevant not only to proving the easement to the road but also in disproving Hand's testimony that no easement existed or that the easement had been abandoned by nonuse over time and that Hand knew of the easement.

(v) *Impeachment by disproving the truth of Hand's testimony.* Hand testified that he had been incapacitated by the August 29 incident; however, testimony of others regarding the subsequent fight several days later when Hand was the aggressor with Damon Pettitt

---

[1] Prior or subsequent difficulties between the parties and similar transactions evidence are admissible in criminal law as probative evidence, despite prohibitions against putting the character of the defendant into evidence; the intentional tort of battery is analogous to the crime of assault or battery. Since there exists no statutory prohibition as to character evidence of a party where relevant in a civil case, then the limitations and procedures of a criminal case do not apply in a civil case.

disproved that he was incapacitated from being knocked in the ditch by the gate as he testified.

> Strictly speaking, there can be no such thing as disproving a fact. A fact is something which is true, and it can never be untrue. The real meaning of the phrase that "a witness may be impeached by disproving the facts testified to by him" is, that he may be impeached by proving that the statements made by him in his testimony are not the truth; and obviously, it must until the end of a trial be an open question for the jury to solve whether or not the testimony of any witness as to any particular matter has been disproved.

*Middle Ga. &c. R. Co. v. Barnett*, 104 Ga. 582, 584 (1) (30 SE 771) (1898); see OCGA § 24-9-82.

From the evidence and issues presented at trial, there may well be other reasons why such evidence was relevant.

2. Hand contends in his second and third enumerations of error that the trial court abused its discretion in overruling his objection to the introduction of evidence relating to the subsequent incident between Damon Pettitt, defendant's nephew, and Hand and the chain saw incident with the defendant. We do not agree.

For similar difficulties between the parties and similar transactions to be probative and therefore admissible, there must exist "some link of association, something which draws together the preceding and subsequent acts, something which gives color of cause and effect to the transaction." (Citations omitted.) *Maxwell v. State*, 262 Ga. 73, 75 (2) (414 SE2d 470) (1992), overruled on other grounds, *Wall v. State*, supra at 510; see also *Grimes v. State*, 232 Ga. App. 155, 156 (2) (500 SE2d 609) (1998); *Todd v. State*, 230 Ga. App. 849, 852 (2) (498 SE2d 142) (1998), overruled on other grounds, *Johnson v. State*, 272 Ga. 468, 469 (532 SE2d 377) (2000); *McTaggart v. State*, 225 Ga. App. 359 (483 SE2d 898) (1997).

Subsequent similar transactions or difficulties between the parties, which demonstrate state of mind, common scheme, motive, or intent, are admissible. *Scott v. State*, 219 Ga. App. 906, 908 (3) (467 SE2d 348) (1996); see also *Lewis v. State*, 234 Ga. App. 873, 877 (3) (b) (508 SE2d 218) (1998); *Haynes v. State*, 199 Ga. App. 288, 290 (2) (404 SE2d 585) (1991).

Both the Damon Pettitt incident and the Phillip Pettitt chain saw incident occurred close in time after August 29, 1999, arose out of the disputed easement or another road in the general area, and Hand came into a physical confrontation with one of them and used violence or the threat of violence against them after a verbal altercation. Similar transactions evidence need not be identical but suffi-

ciently similar to make such evidence probative. "There need only be evidence that the [party] was the perpetrator of both [acts] and sufficient similarity or connection between the independent [act] and the [tort alleged]" so that proof of the one tends to prove the other act. *Gibbins v. State*, 229 Ga. App. 896, 899 (4) (495 SE2d 46) (1997); see also *Rehberger v. State*, 235 Ga. App. 827, 829 (2) (510 SE2d 594) (1998).

3. Hand contends that the trial court erred in directing a verdict that the platted subdivision roads were public roads, because they had been abandoned. We do not agree.

On September 7, 1973, Real Estate World, Inc. recorded subdivision plats in Plat Books F, page 101, containing covenants, and G, page 168, showing roads, of the Superior Court Clerk's Deed Records, Pickens County; the land along Talking Rock Falls Road was subdivided into lots with roads platted and recorded. The deeds out of Real Estate World, executed by Waldrop to Susan Ruth Gleason, i.e., Mrs. Hand, incorporated by reference both plats. The road on the plat went in a circle beyond the Hands' first lots, and Hoffstedter's lot fronted on the circle road. The road at issue crossed Lot 97 A which Hand bought in 1995.

Hand put up a gate across the road that led from Talking Rock Falls Road across Hand's land to Hoffstedter's land to keep people out. Hand erected other gates on roads to keep people out.

Hand and his wife purchased 18 acres in 1992 which were Lots 84-85 and 96 and subsequently purchased more lots so that they owned nearly a hundred acres, including Lots 68-69, 72-B, 81-85, 96, and 97 A and B. In 1995, the Hands acquired Lots 81, 82, 83, and 97 A from R. E. Daegle who had acquired them from Real Estate World.

In 1992, when Hand and his wife bought their lots, Wayne Daniel, Danny and Carolyn Kirk, and Thomas Matthews already lived on lots in the subdivision on Talking Rock Falls Road, and Joe Wright built on a lot on the road at the same time that Hand built.

When a grantor plats and records a subdivision with roads and subsequently sells one or more lots, an easement runs with the title to all purchasers of the lots. When the grantor records a subdivision plat with streets, the grantor creates an express easement and the grantor "as a matter of law created such easements in favor of the property owners in the subdivision, and a jury was not authorized to find otherwise. [Cit.]" *Smith v. Clay*, 239 Ga. 220, 221 (236 SE2d 346) (1977); see also *Walker v. Duncan*, 236 Ga. 331 (223 SE2d 675) (1976).

It is well-established that where a developer sells lots according to a recorded plat, the grantees acquire an ease-

ment in any areas set apart for their use. An easement acquired in this manner is considered an express grant, and is an irrevocable property right. The rationale is that the grantees of the property have given consideration for its enhanced value in the increased price of their lots.

(Citations omitted.) *Walker v. Duncan,* supra at 332.

"[N]o presumption of abandonment arises from mere nonuser for a time less than that required for the perfection of the easement by prescription." *Tietjen v. Meldrim,* 169 Ga. 678, 699 (9) (151 SE2d 349) (1930); *Smith v. Clay,* supra at 221. Since in 1992, Hand acquired the property from Real Estate World as grantor subject to the recorded easement that it granted and the deed restrictions, then Hand could not claim abandonment by nonuse during the period that the grantor retained the land subject to the express easement that it created by grant to all subdivision owners, because the Hands took title subject to the easement in the deed and held the land less than seven years. The grantor retained an easement for his benefit in the lots unsold over the conveyed lots, but also the purchasers had an easement over all the lots where the road was shown. Thus, the grantor had to convey all subsequently sold lots subject to such earlier express easements. See *Deas v. Hughes,* 264 Ga. 9, 10-11 (1) (440 SE2d 458) (1994); *Montana v. Blount,* 232 Ga. App. 782, 784-786 (504 SE2d 447) (1998); *Central of Ga. v. DEC Assoc.,* supra at 790-791.

More importantly under OCGA § 44-9-6, an easement may be lost by abandonment or forfeiture by nonuse of the possessor of the easement for a term sufficient to raise the presumption of release or abandonment. Such statute does not apply to specific grants of easements by deed or recorded plat.

Where an easement of way is acquired by mere user, the doctrine of extinction by mere nonuser may in reason apply; but where such easement is acquired by grant, the doctrine of extinction by nonuser should not apply. Where an easement has been acquired by grant, mere nonuser, without further evidence of an intent to abandon it, will not constitute an abandonment.

(Citations omitted.) *Tietjen v. Meldrim,* supra at 695 (2). Thus, the directed verdict was correct.

4. Hand contends that the trial court erred in charging the jury that they could find punitive damages for Pettitt absent first finding general, special, or nominal damages. We do not agree.

The jury returned a verdict that read "[w]e the jury find for the defendant on his counterclaim in the amount of $100." The trial court

inquired of the jury foreman regarding punitive damages. The jury foreman stated: "[f]or punitive damages, we find no." The verdict was shown to each party, and the trial court gave counsel the opportunity to question or poll the jury which was declined by Hand's counsel.

Whether or not the charge on punitive damages under the facts and circumstances of this case was correct is irrelevant, because the jury awarded no punitive damages for Pettitt. Absent a showing of harm through the return of punitive damages, the alleged error was harmless. "It has a number of times been in effect held by this court that the verdict of the jury may of itself show that the error in charging what should not have been charged was harmless and will not require the grant of a new trial." *Werk v. Big Bunker Hill Mining Corp.*, 193 Ga. 217, 223 (2) (17 SE2d 825) (1941).

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 24, 2002.

*B. Morris Martin, Nancee E. Tomlinson*, for appellant.

*Weaver & Weaver, George W. Weaver, Jeffrey L. Floyd*, for appellee.