**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**December 14, 2021**

# In the Court of Appeals of Georgia

A21A1341. PAPPAS RESTAURANT, INC. v. WELCH et al.

A21A1342. TACTICAL SECURITY GROUP, LLC v. WELCH et al.

MARKLE, Judge.

After Cynthia Welch was injured and her husband Anthony was killed in a shooting in the parking lot of Pappadeaux Restaurant, she sued Pappas Restaurant Group, which owned the property, and Tactical Security Group, LLC, which provided the on-site security guards.[1] The trial court denied Pappas's and Tactical's motions for summary judgment, and certified its order for immediate review. We granted the interlocutory applications, and these appeals followed. After a thorough review of the record, and with the benefit of oral argument, we reverse.

---

[1] Welch filed suit individually and as administratrix of her husband's estate.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation omitted.) *Little-Thomas v. Select Specialty Hosp.-Augusta*, 333 Ga. App. 362, 363 (773 SE2d 480) (2015).

So viewed, the record shows that Pappas owns Pappadeaux and another restaurant on the same property on Windy Hill Road, with parking lots for each and a lower lot for overflow parking. The parking lots are well-lit, and there are surveillance cameras throughout the area. To patrol the grounds, Pappas hired Tactical to provide unarmed, uniformed security guards to deter crime such as automobile break-ins and loitering, and to assist with traffic issues. On Friday nights, two guards were assigned to patrol the lots, and a third guard was stationed in the fire lane in front of Pappadeaux to monitor traffic. The guards patrolled the lots on foot or in marked security cars with flashing lights.

2

On Friday, October 7, 2016, Welch and her husband went to dinner at Pappadeaux and parked in the lower lot. Because the restaurants were extremely crowded that night, with customers waiting over an hour to be seated, there were many people in the parking lot area. Although there were three guards on site most of that evening, one guard left at 10 p.m. After that, one of Tactical's guards patrolled the parking lot while the second guard remained stationed in the fire lane. Shortly after 10 p.m., as the Welches walked through the parking lot back to their car, a man stepped in front of them, demanded their belongings, and then shot both of them. Anthony was killed. The shooter and his accomplices were later captured and convicted of murder.

Security footage from the surveillance cameras showed the assailants driving into the lot shortly after 10 p.m. and lingering around their car before the attack. The footage also confirms that, 60 seconds before the shooting, a guard in a marked security vehicle with the lights flashing patrolled the area where the assailants were lingering and where the attack would occur moments later.

Cynthia Welch sued Pappas and Tactical for premises liability, negligence, and wrongful death.[2] Pappas and Tactical moved for summary judgment, which the trial court denied. We granted the applications for interlocutory review, and these appeals followed.

*Case No. A21A1341*

1. In this appeal, Pappas contends that the trial court erred in denying its summary judgment motion because Welch failed to show that there were substantially similar crimes that made the instant attack foreseeable. It further asserts that the trial court erred in relying on expert testimony because the expert stated outright that he had no opinion on foreseeability. We agree that Pappas was entitled to summary judgment.

Under Georgia law, to state a claim for negligence,

the following elements are essential: (1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting

---

[2] Welch's claims of ordinary negligence are subsumed by her premises liability claim. See *Tomsic v. Marriott Intl.*, 321 Ga. App. 374, 385 (4) (739 SE2d 521) (2013).

4

injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

(Citation omitted.) *Brown v. All-Tech Investment Group*, 265 Ga. App. 889, 893 (1) (595 SE2d 517) (2003). In Georgia, it is well settled that a proprietor owes its invitees a duty "to exercise ordinary care in keeping the premises and approaches safe."[3] OCGA § 51-3-1. But, "the landowner is not an insurer of an invitee's safety. An intervening criminal act by a third party generally insulates a landowner from liability unless such criminal act was reasonably foreseeable." (Citation omitted.) *Rautenberg v. Pope*, 351 Ga. App. 503, 505 (1) (831 SE2d 209) (2019).

Our case law has set forth the way in which a plaintiff can show that the criminal activity was foreseeable. First, a plaintiff may point to previous crimes that are substantially similar to the one at issue. As our Supreme Court explained,

> if the proprietor has reason to anticipate a criminal act, he or she then has a duty to exercise ordinary care to guard against injury from dangerous characters. Accordingly, the incident causing the injury must be substantially similar in type to the previous criminal activities

---

[3] Because the duty to keep the premises safe is non-delegable, Pappas would be vicariously liable for Tactical's alleged negligent acts if the criminal activity was foreseeable. See *Camelot Club Condo. Assn. v. Afari-Opoku*, 340 Ga. App. 618, 627 (2) (b) (798 SE2d 241) (2017); see also OCGA § 51-2-5.

occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers . . . against the risk posed by that type of activity.

(Citations and punctuation omitted.) *Sturbridge Partners v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997); see also *River Place at Port Royal Condo. Assn. v. Sapp*, 358 Ga. App. 632, 634-635 (856 SE2d 28) (2021); *Doe v. Prudential-Bache/A. G. Spanos Realty Partners*, 268 Ga. 604, 605 (492 SE2d 865) (1997); *Rautenberg*, 351 Ga. App. at 505 (1).

In the absence of a substantially similar prior crime, a plaintiff can show foreseeability and avoid summary judgment by proffering other evidence that the proprietor knew of the danger. See *Med. Center Hosp. Auth. v. Cavender*, 331 Ga. App. 469, 480 (6), n. 13 (771 SE2d 153) (2015); see also *Piggly Wiggly Southern v. Snowden*, 219 Ga. App. 148, 149 (1) (b) (464 SE2d 220) (1995) (crime foreseeable where property owner knew of danger); *Matt v. Days Inns of America*, 212 Ga. App. 792, 795 (443 SE2d 290) (1994) (numerous crimes in hotel parking lot, as well as in surrounding areas, many of which were violent crimes, raised question for jury on issue of foreseeability). The touchstone of the inquiry is whether the defendant had knowledge of the risk of criminal activity. *Piggly Wiggly Southern*, 219 Ga. App. at

149 (1) (b). Nevertheless, there remains no "duty to anticipate unlikely, remote, or slightly possible events." (Citation omitted.) *Traicoff v. Withers*, 247 Ga. App. 428, 430 (544 SE2d 177) (2000).

Here, the trial court focused on evidence of the frequency of prior property crimes, and it relied on e-mails from Pappas's employees and expert testimony proffered by Welch. We consider whether this evidence creates a factual question under these methods of establishing foreseeability, concluding that it does not.

(a) *Substantially similar crimes*.

> In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. While the prior criminal activity must be substantially similar to the particular crime in question, that does not mean identical. What is required is that the prior incident be sufficient to attract the [proprietor's] attention to the dangerous condition which resulted in the litigated incident. Further, the question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts.

(Citations and punctuation omitted.) *Sturbridge Partners*, 267 Ga. at 786; see also *Rautenberg*, 351 Ga. App. at 505 (1); *Cavender*, 331 Ga. App. at 475 (1) (a)

7

("Foreseeable consequences are those which, because they happen so frequently, may be expected to happen again.") (citation and punctuation omitted; emphasis in original).

To establish foreseeability based on similar crimes, Welch submitted police reports, testimony of Pappas's and Tactical's representatives, and the opinion of a security expert. However, none of this evidence is sufficient to create a factual question on foreseeability.

First, Welch submitted evidence of police reports detailing automobile break-ins and thefts on the property from 2011 through 2016, and e-mails between Pappas and Tactical about crime in the general area. It is undisputed that Pappas knew that there were a large number of break-ins in its lot prior to the shooting. It is also undisputed that the police gave Pappas's representative a copy of the 2014 crime reports when they met with Pappas that year to discuss the property crime in their lot. However, there is no evidence in the record to show that Pappas was aware of the police reports from 2015 and 2016 that Welch submitted to establish foreseeability.[4] Nor was there evidence that Pappas was aware of any crimes occurring on their lot

---

[4] "There is no authority in this State imposing a duty upon a property owner to investigate police files to determine whether criminal activities have occurred on its premises." *Sun Trust Banks v. Killebrew*, 266 Ga. 109 (464 SE2d 207) (1995).

in 2015 and 2016, other than the break-ins of unattended vehicles. *Bolton v. Golden Business*, 348 Ga. App. 761, 762 (1) (823 SE2d 371) (2019) (plaintiff must show that owner was aware of *similar* crimes); *Cavender*, 331 Ga. App. at 474 (1) (plaintiff has burden to show owner's knowledge).

Moreover, pretermitting whether the police reports would be admissible, these records show that some of the incidents were not similar in nature, likeness, or even location to the instant attack. *Sturbridge Partners*, 267 Ga. at 786. There were crimes that occurred inside the restaurant, rather than the parking lot, or were between employees. Id.; see also *Vega v. La Movida*, 294 Ga. App. 311, 314 (1) (a) (670 SE2d 116) (2008) (in general, crimes that occur in different locations are not substantially similar, and incidents occurring in a parking lot cannot show there is a risk of danger inside the restaurant).

Next, Welch submitted depositions from Pappas and Tactical employees. Pappas's security head, Scott Heenan, testified that the guards were there to provide a visible deterrent to crime by patrolling, which they had done a minute before the attack. Heenan's testimony confirmed that Pappas was aware of, and took action to stop, property crimes such as break-ins of unattended cars, and that they had been successful in deterring property crimes in the parking lot. None of Heenan's

9

testimony shows any knowledge of *similar* crimes in the lot or that an attack such as this one was possible. *Bolton*, 348 Ga. App. at 762 (1); *Vega*, 294 Ga. App. at 314 (1) (a).

Joann Altman, one of Pappas's security managers, acknowledged that Pappas had a responsibility to oversee the security company and guards used at the property. Her comments confirmed that guards were sometimes on site at the restaurants to escort employees who had parked in remote lots to protect them from crime; however, her comments about the risks of any such criminal activity were not specific to the Windy Hill location of Pappas's restaurants where the Welches were attacked. Thus, these comments cannot establish Pappas's knowledge that such an attack was foreseeable at this location. See *Raines v. Maughan*, 312 Ga. App. 303, 305-306 (2) (a) (718 SE2d 135) (2011) (evidence of carjacking in a location of unknown proximity did not make murder foreseeable); see also *Sturbridge Partners*, 267 Ga. at 786 (noting that the court must consider the proximity of the prior crimes in evaluating whether they are similar).

Nor does the testimony from Tactical's owners create a factual question on the foreseeability of the attack. In e-mails about a year before the shooting, one of Tactical's owners informed Altman its guards and patrols had been a "great deterrent"

and that there had "not been a single break in at the Windy Hill location" despite news reports of break-ins with armed suspects in surrounding complexes. Altman responded that they should continue having a second guard on site, and added, "[l]ooks like things are really scary over there." The week before the shooting occurred, Tactical advised Pappas of an increase in crime in the "area." And, a few days before the incident, Tactical notified Altman that there had been 69 car break-ins in "the Atlanta area" in the past week, and that it was "a professional crew that [had] the police baffled." Tactical's owners suggested adding additional guards Monday through Thursday nights. Altman responded, "I know it can get crazy out there, but we have to balance this with our budget[.]"

Nothing about these comments alters the nature of the prior crimes or makes the shooting foreseeable. Although Altman wrote that the situation was "scary" and "crazy," such comments do not turn property crimes into a precursor for a bold shooting to occur in the lot during a busy weekend evening. See *St. Jude's Recovery Center v. Vaughn*, 354 Ga. App. 593, 596 (2) (841 SE2d 108) (2020). Additionally, information that other crimes occurred in the "area" or the "Atlanta area" as opposed to Pappas's parking lot, or even the street Pappas's restaurant is on, does not meet the location or proximity requirement. See *Sturbridge Partners*, 267 Ga. at 786; *Raines*,

11

312 Ga. App. at 305-306 (2) (a); compare *Woodall v. Rivermont Apartments Ltd. Partnership*, 239 Ga. App. 36, 40-41 (1) (520 SE2d 741) (1999) (physical precedent only) (extent of the prior crimes, owner's concern over crimes, and location of property in high crime area raised jury question on foreseeability).

Finally, Welch submitted testimony from security expert John Villines to create a link between the property crimes and the tragic shooting. Villines identified other altercations on the property that evolved into physical confrontations, and he opined that the security was deficient in numerous ways. With regard to the similarity of the prior crimes, Villines explained that he focused on the similarity of the *opportunities* for criminal activity and not the similarities in the *nature* of the crimes or the outcomes. In other words, Villines stated that the prior car break-ins were similar to the shooting because, in both cases, he concluded that the lack of sufficient security measures made it possible for criminals to enter the lot, avoid detection, commit the crime, and flee. Villines admitted, however, that he was not asked to, and in fact could not, render an opinion on the foreseeability of the shooting.

We cannot conclude that Villines's testimony is sufficient to defeat summary judgment. In evaluating whether the prior instances are substantially similar, we consider the *nature* of the crimes; that is, "we consider the key to sufficient similarity

12

to be not in the details of the crime or even in the degree of force used, but rather in the *nature* of the offense: was the prior incident also an offense against a person, or was it an offense against property[.]" (Citation and punctuation omitted; emphasis in original.) *Wade v. Findlay Mgmt.*, 253 Ga. App. 688, 690 (560 SE2d 283) (2002). Villines specifically stated that he was not focusing on the nature of the crimes or on whether the shooting was foreseeable. As a result, his testimony cannot create a factual question that would preclude summary judgment.

In reaching our conclusion here that the evidence in the record is insufficient to establish that the shooting was foreseeable, the Supreme Court of Georgia's reasoning in *Doe* is instructive. See *Doe*, 268 Ga. at 606. In that case, our Supreme Court explained that prior property crimes that occurred in an apartment building parking deck did not make a subsequent sexual assault foreseeable because "the '*very nature*' of the thefts and acts of vandalism committed in this case do not suggest that personal injury may occur." (Emphasis supplied.) *Doe*, 268 Ga. at 606.

In this case, the shooting occurred in a well-lit and busy parking lot. The prior crimes committed on Pappas's property, of which it had knowledge, were limited to vehicle break-ins. The very brazen nature of the shooting — in a busy lot; under a streetlight; with security patrolling the area — is the complete opposite of the nature

13

of the break-in of unattended cars. As such, those prior break-ins of unattended vehicles could not have put Pappas on notice that a shooting might occur. *Doe*, 268 Ga. at 606; see also *Agnes Scott College v. Clark*, 273 Ga. App. 619 (616 SE2d 468) (2005) (break-ins of unoccupied cars without personal contact did not make subsequent abduction foreseeable); *Baker v. Simon Property Group*, 273 Ga. App. 406, 407-408 (1) (614 SE2d 793) (2005) (summary judgment proper where prior crimes in parking lot, including thefts from unoccupied cars, and stolen vehicles, did not make carjacking and shooting foreseeable); *Ritz Carlton Hotel Co. v. Revel*, 216 Ga. App. 300, 303 (1) (454 SE2d 183) (1995) (rape and robbery of a hotel guest in her room was not foreseeable where there were only prior incidents of theft and no violent assaults); compare *Wal-Mart Stores v. Lee*, 290 Ga. App. 541, 548 (3) (a) (659 SE2d 905) (2008) (finding instances of robberies and assaults with a weapon, along with property stolen from cars in the parking lot, made carjacking foreseeable because it was "reasonable to anticipate that an unauthorized entry into a vehicle might occur when the driver was nearby and that personal harm to the driver would result."). In fact, the *only* similarity between this crime and the prior activity is that the crimes occurred in Pappas's parking lot. But that is not enough to make the shooting foreseeable. See *Retail Property Trust v. McPhaul*, 359 Ga. App. 345, 349 (1) (a)

14

(857 SE2d 521, 526 (1) (a)) (2021); *Wade*, 253 Ga. App. at 689 (explaining the necessity that the "prior incident be sufficient to attract the landlord's attention to the dangerous condition which resulted in the litigated incident." (citation omitted); see also *St. Jude's Recovery Center*, 354 Ga. App. at 596 (2) (proprietor could not have foreseen rape of resident even though it was aware that other residents had been harassed and were vulnerable to attack); *Cavender*, 331 Ga. App. at 475 (1) (a); *Drayton v. Kroger Co.*, 297 Ga. App. 484, 486 (677 SE2d 316) (2009) (evidence of prior nonviolent property crimes and robbery of store employee were not substantially similar to robbery and assault of customer to make it reasonably foreseeable).

Moreover, these prior crimes would not put Pappas on notice of the possibility of a shooting because that is not the type of injury one would expect to follow from the break-in of unoccupied cars in a busy, well-lit parking lot. *McAfee v. ETS Payphones*, 283 Ga. App. 756, 759 (642 SE2d 422) (2007) (owner was not liable for injuries resulting from criminal acts because "the prior criminal acts here do not suggest that personal injury would occur in the manner that it did in this case.") (citation and punctuation omitted); *Wojcik v. Windmill Lake Apartments*, 284 Ga. App. 766, 768-770 (645 SE2d 1) (2007) (physical precedent only) (vehicle break-ins and other suspicious activity, such as drug activity or prostitution, did not alert

15

property owner to foreseeability of a murder); compare *Rautenberg*, 351 Ga. App. at

506 (prior property crimes in tractor-trailer parking lot made subsequent attack

foreseeable because security company was hired to prevent such crimes and the

plaintiff's injuries arose from those crimes "as opposed to . . . a sudden intentional

assault performed in an area known for minor theft."). As a result, when we inquire

into the nature, location, and extent of the prior thefts from unoccupied cars, we

conclude that these crimes are not substantially similar to the shooting such that they

would have alerted Pappas to the risk of the instant attack, and thus they do not

establish that the shooting was foreseeable.

(b) *Alternate means of showing foreseeability*.

Welch also asserted that she could show that the shooting was foreseeable by

pointing to Pappas's knowledge of the danger or the fact that the extent of the prior

crimes is so great that it would put Pappas on notice.[5] See *Shoney's v. Hudson*, 218

Ga. App. 171, 173 (460 SE2d 809) (1995), overruled in part on other grounds by,

---

[5] We have described this as two different methods for showing foreseeability in the absence of a substantially similar prior crime: (1) "a danger could be so obvious that an issue for jury determination could exist regarding notice and/or foreseeability despite the absence of a prior similar incident on those premises;" and (2) a defendant's acknowledgment of the danger. (Citation and punctuation omitted.) *Cavender*, 331 Ga. App. at 480 (6) & n. 13.

*Brown v. State*, 274 Ga. 31, 34 (1) (549 SE2d 107) (2001). To establish this knowledge, Welch points to the e-mails between Pappas and Tactical as well as Altman's testimony that Pappas had guards present to protect employees from a possible robbery as they walked to their cars. But the mere acknowledgment that a robbery *could* happen does not make it "probable, according to ordinary and usual experience." (Citation and punctuation omitted). *Goldstein, Garber & Salama v. J. B.*, 300 Ga. 840, 842 (1) (797 SE2d 87) (2017); see also *Traicoff*, 247 Ga. App. at 430 (there is no duty "to anticipate unlikely, remote, or slightly possible events.") (citation omitted ). The e-mails and testimony do not rise to that level of probability.

As noted, the e-mails reference incidents in the "area" and not specifically Pappas's property. General crime statistics are insufficient to raise a question of fact on the foreseeability of risk. See *Agnes Scott College*, 273 Ga. App. at 622-623 (1). Nor do the references to an undefined "area" establish that Pappas knew the Windy Hill location was a high crime area.

Welch contends that the extent of the prior property crimes showed that there were problems with security, thus making the shooting foreseeable. See *Woodall*, 239 Ga. App. at 40 (1). But "[o]ne is not bound to anticipate or foresee and provide against that which is unusual or that which is only remotely and slightly probable."

17

(Citation omitted.) *Brown*, 265 Ga. App. at 894 (1). Here, there was no evidence of violence occurring in the parking lot or the use of firearms, only break-ins of unoccupied cars. This is insufficient to establish Pappas's knowledge of a risk. See *Boone v. Udoto*, 323 Ga. App. 482, 485-486 (1) (747 SE2d 76) (2013) (victim injured when struck with gun failed to show conduct was foreseeable where there was no knowledge of likelihood of crime, no prior incidents involving guns, and no other altercations involving weapons); see also *Johnson v. MARTA*, 230 Ga. App. 105, 106 (1) (495 SE2d 583) (1998) (number of prior crimes, none of which were violent, did not put MARTA on notice of a violent knife assault). As a result, we must conclude that the trial court erred in denying Pappas's motion for summary judgment because Welch failed to raise a question of fact as to whether the shooting was foreseeable.[6]

*Case No. A21A1342.*

2. In its appeal, Tactical argues that it was entitled to summary judgment because it had no duty towards the Welches as either third-party beneficiaries to its contract with Pappas, or under Restatement (Second) of Torts § 324A.[7] It contends

---

[6] In light of this conclusion, we need not address Pappas's argument that Welch failed to establish causation.

[7] Restatement (Second) of Torts § 324A provides:

there was no evidence to show the crime was foreseeable, and it urges this Court to engage in a public policy analysis to prevent holding it to a higher standard – that of preventing all harm. We agree that Tactical was entitled to summary judgment.

First, Welch was not a third party beneficiary of the security contract. As we have explained,

> [i]n personal injury cases, an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him from physical injury. Furthermore, [a]lthough the third-party beneficiary need not be specifically named in the contract,

---

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Georgia adopted the rule regarding liability to third persons for the negligent performance of an undertaking under § 324A in *Huggins v. Aetna Casualty & Surety Co.*, 245 Ga. 248, 249 (264 SE2d 191) (1980).

19

the contracting parties' intention to benefit the third party must be shown on the face of the contract. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient. And as we have stated before, we recognize that whenever a premises owner contracts with a private security company the parties may expect the security services provided to benefit invitees who visit the property. As we have held, however, an injured invitee may not recover against the security company for negligent performance if the contract is silent as to the parties' intent to confer that benefit.

(Citations and punctuation omitted.) *Cavender*, 331 Ga. App. at 478 (4); see also *Fair v. C V Underground*, 340 Ga. App. 790, 794-795 (2) (798 SE2d 358) (2017). Here, pretermitting whether the unsigned contract was even in effect, nothing in the language of the contract indicated an intent to confer a benefit to third parties.

To the extent that Welch argues that the Restatement creates a duty to the Welches irrespective of the contract or Pappas's duty, we are not convinced.[8] We have never applied the Restatement in this manner. See *Brown*, 265 Ga. App. at 898 (2) (a) (ii) (explaining that our courts have applied Restatement § 324A to cases

---

[8] Welch points to the copy of "Pappas Parking lot Guard Expectations," which instructed that guards were to deter criminal activities, look for *any* suspicious activity in the lot, including loitering, and watch to be sure any individuals walking alone safely enter their cars. But the parties point to no evidence in the record, and we have found none, showing that Pappas ever gave this document to Tactical or any of the guards.

20

involving an insurer's performance of an undertaking to inspect or the failure to warn against workplace hazards, and other states have applied it to the maintenance of traffic signals). Even if we were to extend the Restatement to these types of premises liability claims, because the crime was not foreseeable, as discussed in Division 1, Tactical would be entitled to summary judgment. *Wright v. Osmose Wood Preserving*, 206 Ga. App. 685, 687 (1) (426 SE2d 214) (1992) (physical precedent only) (in a case involving negligent inspection of a utility pole, noting that the "common element" in cases applying Restatement (Second) of Torts § 324A is foreseeability).[9]

For the foregoing reasons, the trial court erred in denying the motions for summary judgment. We therefore reverse the trial court's order.

*Judgments reversed. Barnes, P. J., and Gobeil, J., concur*.

---

[9] Having found the issue of foreseeability determinative in this appeal as well, we do not reach Tactical's argument as to causation.