A97A1609. WRIGHT v. GOSS.
(494 SE2d 23)

BEASLEY, Judge.

Goss filed an application in the Probate Court of Fulton County for letters of administration on the estate of his brother, who died in 1995. Goss averred that the decedent was unmarried. Wright filed a caveat, contending she was the decedent's common law spouse and was entitled to administer his estate. She also asserted that the court was without jurisdiction, because she and decedent were residents of Clayton County at the time of his death. The court granted Goss' motion for summary judgment on both grounds of the caveat.

Goss presented various documents in which decedent had identified himself as a Fulton County resident: decedent's driver's license, voter registration card, tax returns, and applications for loans made by him and Wright on property jointly owned by them in Clayton County. In the loan applications, both the decedent and Wright represented themselves as unmarried. In other documents (income tax returns, earnings statements, an automobile insurance application, and medical records) Wright also represented herself as unmarried. Decedent's relatives, co-workers, neighbors and friends testified by affidavit that he never stated he was married and had always resided with his parents in Fulton County. Most affiants testified they saw him there on a regular basis. His mother and a neighbor testified he was there every night.

In her deposition, Wright testified that she and Goss had purchased the property in Clayton County as a residence years earlier and that he spent four nights a week there and the remainder of his time taking care of his ill parents. She further testified that Goss kept a few items of clothing at the residence and that their joint savings account statement was mailed to them there. According to Wright, she and Goss held themselves out as being married by his registering them as husband and wife at a motel they frequented, by

her introducing him to neighbors as her husband, by wedding rings they bought for each other and wore, and by their representing themselves to her children as married. In two affidavits, neighbors testified they saw Goss at the parties' Clayton County residence virtually every day.

1. " ' "On motion for summary judgment, the burden is on the movant, regardless of which party would have the burden of proof at trial, to show there is no genuine issue of material fact. All evidence is to be construed most strongly against the movant, and the party opposing the motion is given the benefit of all reasonable doubts and all favorable inferences that can be drawn from the evidence. (Cits.)" (Cit.)' [Cit.] 'In granting such motions, we must remain mindful of the jury's role in the process to resolve any and all conflicts in the evidence. "It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. . . ." (Cit.)' [Cit.]" *Radford v. Reeves Constr. Co.*, 226 Ga. App. 214, 215 (486 SE2d 81) (1997).

"When the alleged marriage is unlicensed and nonceremonial, the burden is on the proponent to prove that a common-law marriage existed." *Baynes v. Baynes*, 219 Ga. App. 848, 849 (1) (467 SE2d 195) (1996).[1] "In order for a common law marriage to come into existence, the parties must be able to contract, must agree to live together as man and wife, and must consummate the agreement. See OCGA § 19-3-1; [cit.]" *Ga. Osteopathic Hosp. v. O'Neal*, 198 Ga. App. 770, 777-778 (10) (403 SE2d 235) (1991). "When the relationship between the parties begins as an illicit arrangement, the burden is on the party asserting the validity of the marriage to show that the illicit relationship ended and that the parties did actually enter a marriage contract. [Cit.] In the case of a common law marriage, 'This may be done by . . . such circumstances as the act of living together as man and wife, holding themselves out to the world as such, and repute in the vicinity and among neighbors and visitors that they are such, and indeed all such facts as usually accompany the marriage relation and indicate the factum of marriage. The evidence in each case is for the jury.' [Cit.]" *Brown v. Brown*, 234 Ga. 300, 302 (215 SE2d 671) (1975). " ' "The . . . fact of cohabitation is treated as essential, if not the main factor in establishing in this State a common-law mar-

---

[1] In 1996, the General Assembly enacted OCGA § 19-3-1.1 which provides that "[n]o common-law marriage shall be entered into in this state on or after January 1, 1997." However, "[o]therwise valid common-law marriages entered into prior to January 1, 1997" are not affected and continue to be recognized.

riage." ' [Cit.]" *O'Neal*, supra at 778 (10). Of particular import is that "such legal relationship cannot be partial or periodic," *Baynes*, supra, and that the three requirements must coexist. *Brown v. Brown*, supra at 301.

The concept of a conflict in the evidence should not be confused with the concept that parties cannot be married only periodically. Both, of course, are valid legal concepts. The latter would mean that if the factfinder finds as *true* that the parties sometimes held themselves out as not married when that was convenient or served their purposes and at other times held themselves out as married, then the factfinder would be compelled to conclude that the party who has the burden to prove a common law marriage existed would fail because the evidence conclusively shows that one element is disproved: that the parties agreed to live together as husband and wife. *Ga. Osteopathic Hosp.*, supra. It would be unlawful to agree to do that only periodically. Either you agree to be married, and married you are all the time, or you do not, in which case you are not married at all. See *Baynes*, supra at 849 (1).

In this case, there is conflict in the evidence. Some witnesses say the parties held themselves out as married, and others say they held themselves out as not married. Obviously, no one can testify as to what they did at *all* times. That is, the nature of the question requires limited-time evidence. That is not to say that the marriage-proponent has failed as a matter of law to prove a common law marriage.

If the factfinder believes that the evidence of non-marriage either was non-conclusive (such as that Goss never told his friends or family and spent all or most nights with his elderly parents) or was not credible, and the factfinder believes the marriage-proponent's evidence, then the factfinder could find that a common law marriage existed.

It is not true that if there is any undisputed evidence that they held themselves out as unmarried (loan applications, tax returns, etc.), then as a matter of law that precludes the element that they must agree to live together as husband and wife. A person might say on government and business documents that he or she is single, in order to reduce taxes or obtain welfare or for some other personal purpose such as not wanting certain persons to know they are married, and actually be common law married. The only elements of common law marriage are capacity to contract (which was missing in *Long v. Marino*, 212 Ga. App. 113 (441 SE2d 475) (1994), but is present here in that there is no contrary evidence or suggestion), intention to live together as husband and wife (which there is some evidence of here in the Clayton house situation), and consummation of the agreement (which there is evidence of here).

Therefore, the question of whether a common law marriage existed is for the jury.

2. "The judge of the probate court can grant administration only on the estate of a person who was: (1) A resident at the time of his death of the county where the application is made. . . ." OCGA § 15-9-31.

One's legal residence for the purposes of this statute is the same as his domicile. Cf. *Hungerford v. Spalding*, 183 Ga. 547 (189 SE 2) (1936) (equating residence with domicile under OCGA § 53-3-1 (b), which gives jurisdiction to probate the will to the judge of the probate court of the county of the testator's residence at the time of death); see also *Sorrells v. Sorrells*, 247 Ga. 9, 11 (3) (274 SE2d 314) (1981) (one's legal residence for the purpose of being sued in this state (see Ga. Const. of 1983, Art. VI, Sec. II, Par. VI) is generally the same county as his or her domicile); *Worrell v. Worrell*, 242 Ga. 44, 45 (1) (247 SE2d 847) (1978) (the term "resident" in OCGA § 19-5-2, relating to divorce actions, means "domiciliary").

" 'A man may have several residences, but only one place of domicile. There must be a concurrence of actual residence, and the intention to remain, to acquire a domicile. . . . "Domicile," unlike "residence," means a permanent place of abode[,] . . . whereas "residence" is not necessarily permanent, and may be at some place other than the place of domicile.' " *Davis v. Holt*, 105 Ga. App. 125, 129 (1) (a) (123 SE2d 686) (1961). "The domicile of every person who is of full age and is laboring under no disability is the place where the family of the person permanently resides, if in this state." OCGA § 19-2-1 (a). "The domicile of a person sui juris may be changed by an actual change of residence with the avowed intention of remaining at the new residence." OCGA § 19-2-1 (b).

In this case, there is conflicting evidence on the question of the decedent's domicile at the time of his death. A finding that he and Wright entered into a common law marriage would support the conclusion that he was a domiciliary of Clayton County. Conversely, a finding that no such marriage existed would lead to the conclusion that he was a domiciliary of Fulton County. The court thus erred in granting Goss' motion for summary judgment on this ground of the caveat.

*Judgment reversed. McMurray, P. J., and Smith, J., concur.*

DECIDED OCTOBER 23, 1997 —
RECONSIDERATION DENIED NOVEMBER 17, 1997 — ■

*James L. Ford, Sr., Christopher G. Moorman*, for appellant.

*Barron & Barron, George L. Barron, Jr., Garlan L. Barron*, for appellee.