A98A2230. IN RE ESTATE OF WILSON.

(512 SE2d 383)

BEASLEY, Presiding Judge.

The tragic crash of ValuJet Flight 592 in the Florida Everglades on May 11, 1996, killed Teresa K. Wilson, who died intestate. Brent Hinely filed an application for letters of administration with the probate court, claiming he was Teresa's common-law husband. Teresa's father, Nelson Wilson, filed a caveat to challenge the existence of a common-law marriage. After a lengthy bench trial, the probate court found that a common-law marriage did not exist, denied Hinely's application, and appointed Nelson Wilson as estate administrator. Hinely appeals on general grounds, arguing that the court did not consider numerous significant facts and the entirety of the evidence.

1. In its 11-page detailed order, the court emphasized that it "carefully considered all evidence in this case, including the credibility and weight to be given to the testimony and other evidence of the parties." The court found "Hinely's testimony, as well as the testimony of many of his witnesses to be evasive and frequently incredible. The testimony of Hinely on issues material to the outcome of the case was not credible and was impeached." The evidence Hinely claims the court overlooked is merely a repetition of the testimony found incredible.

"When the alleged marriage is unlicensed and nonceremonial, the burden is on the proponent to prove that a common-law marriage existed. In order for a common law marriage to come into existence, the parties must be able to contract, must agree to live together as man and wife, and must consummate the agreement."[1] "An agreement to marry in the future is insufficient to establish a common law marriage. Such a bond can be established under OCGA § 19-3-1 only by an express, present marriage contract."[2]

---

[1] (Citations and punctuation omitted.) *Holmes v. Holmes*, 232 Ga. App. 434 (1) (502 SE2d 294) (1998). See OCGA § 19-3-1; *Dismuke v. C & S Trust Co.*, 261 Ga. 525, 526 (1) (407 SE2d 739) (1991) ("the party asserting the existence of the common-law marriage must establish its existence by a preponderance of the evidence"); *Wright v. Goss*, 229 Ga. App. 393, 394 (1) (494 SE2d 23) (1997) (burden on the proponent to prove common-law marriage); *Frazier v. State*, 219 Ga. App. 768, 770 (1) (467 SE2d 338) (1996) ("the party asserting a common law marriage must prove its existence to a preponderance of the evidence") (citations and punctuation omitted); *Dixon v. State*, 217 Ga. App. 267, 268 (456 SE2d 758) (1995) (same). See generally *Brown v. State*, 208 Ga. 304, 306 (1) (a) (66 SE2d 745) (1951).

[2] *Holmes*, supra, 232 Ga. at 434 (1).

Teresa Wilson and Hinely had the capacity to contract. The dispute is whether they agreed to live together as man and wife and consummated the agreement. This "may be inferred from proof of cohabitation and that the parties held themselves out to the world as husband and wife, and such proof may be made by general repute among neighbors and others in a position to know the facts. . . . While it is the rule that cohabitation, illicit in its inception, will be presumed to have so continued throughout the period of cohabitation, yet if . . . the cohabitation is continued, and the parties thereafter hold themselves out as man and wife, if the original illegal cohabitation was had in the absence of an attempted ceremonial marriage, a new and valid agreement of marriage will be presumed to have been entered upon, in the absence of anything appearing to the contrary."[3] But the "legal relationship cannot be partial or periodic."[4]

Hinely presented evidence that he and Teresa cohabited from 1992 until her death in 1996 and that in 1993 they agreed to be married under common law as man and wife. He also elicited testimony that they had referred to each other as husband and wife, had been viewed as such at times by family, friends and neighbors, and that his grief at her death was consistent with a marriage relationship.

The court found this testimony incredible, and for good reason. The overwhelming weight of the evidence, particularly when construed in Nelson Wilson's favor, disproves Hinely's contentions.

(a) Soon after Teresa's death, Hinely handwrote a note admitting to Nelson Wilson "that I was never common law married to Teresa Kim Wilson."

(b) In 1995, Hinely moved from the couple's joint residence on Tybee Island, which Teresa owned, to take a job in Atlanta; Teresa moved to Swainsboro to work with her father. The cohabitation ended, with only weekend visits to Tybee Island.

(c) Numerous neighbors, co-workers, and family members testified that Hinely and Teresa Wilson did not refer to each other as husband and wife. Teresa's family referred to him as the "soon-to-be" son-in-law.

(d) In 1994 Hinely gave Teresa an "engagement" ring, which Teresa displayed to others as evidence the couple intended to be married in the future. In the fall of 1994, the couple obtained a marriage license, telling friends they might now get married. But they never followed through.

---

[3] *Brown*, supra, 208 Ga. at 306; see *Wright*, supra, 229 Ga. App. at 394 (1); *Fireman's Fund Ins. Co. v. Smith*, 151 Ga. App. 270, 271 (1) (259 SE2d 675) (1979).

[4] (Citation and punctuation omitted.) *Wright*, supra, 229 Ga. App. at 395; *Baynes v. Baynes*, 219 Ga. App. 848, 849 (1) (467 SE2d 195) (1996).

(e) In response to a direct question from a salesman in April 1996, Teresa stated they were not married.

(f) After 1993 the couple consistently referred to each other as fiancé in conversations with friends and associates. Hinely's mother referred to Hinely as Teresa's fiancé in interviews with reporters following the crash. In 1995 Hinely told an associate he had just asked Teresa for her hand in marriage.

(g) In a sworn complaint filed with the Gwinnett County Board of Realtors in 1995, Hinely referred to Teresa Wilson as his fiancé. They filed separate tax returns in 1995, in which they stated under penalty of perjury they were single. In a 1995 FHA loan application, they likewise stated under penalty of perjury they were unmarried. Hinely signed a W-4 form in 1994 stating under penalty of perjury he was single. In 1994 Teresa Wilson sent a letter to a credit card company stating she was single.

(h) In post-1993 employment documents Teresa Wilson and Hinely repeatedly indicated they were unmarried. After Teresa's death, Hinely surreptitiously altered a company memo he had authored in 1995 to change a reference to Teresa as his fiancé to Teresa as his wife. He then listed the altered document in his pre-trial order as evidence of the marriage. In mid-1996 he changed some life insurance designations at work to indicate Teresa (then dead) would be a beneficiary as his wife. Other questionable conduct included offering witnesses a share of the estate if he prevailed in his claim.

(i) Teresa Wilson never adopted Hinely's last name, even though in two previous marriages she had adopted the last name of her husbands.

(j) Teresa told her friends in 1995 and 1996 that she had no intention of marrying Hinely, that he was not the man for her, and that she was not ready to get married.

The existence of a common-law marriage is a question for the trier of fact.[5] The trier weighs the credibility of witnesses and the weight of the evidence.[6] If there is any evidence to support the finding of no marriage, the decision must be upheld.[7] In this case, where a jury was waived, "[t]he trial judge may hear evidence to determine whether a marriage exists, and his decision will not be disturbed on

---

[5] *Wright*, supra, 229 Ga. App. at 394 (1); *Fireman's Fund*, supra, 151 Ga. App. at 271 (1).

[6] *Baynes v. Baynes*, supra, 219 Ga. App. at 849 (1).

[7] *Jordan v. State*, 267 Ga. 442, 446 (2) (480 SE2d 18) (1997) (no marriage found in light of conflicting evidence); *Conyers v. State*, 249 Ga. 438, 441 (3) (291 SE2d 709) (1982) (no marriage where evidence equivocal); *Baynes*, supra, 219 Ga. App. at 849 (1) (no marriage despite appellant's testimony); *Lattimore v. State*, 175 Ga. App. 756 (2) (334 SE2d 701) (1985) (no marriage where conflicting evidence).

appeal if there is any evidence to support his finding."[8] In consideration of the record, then, we hold as we did in *Frazier v. State* that "[a]lthough the evidence is in conflict, there exists some evidence to support the trial court's finding of the nonexistence of a common law marriage, and we will not disturb that finding on appeal."[9] In this case the evidence is abundantly more than "any." The facts as found do not constitute a common-law marriage as a matter of law.

2. This Court declines Nelson Wilson's request to impose a Rule 15 (b) frivolous appeal penalty against Hinely and his counsel.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 17, 1999.

*Ashman, Lasky & Cooper, Charles R. Ashman, Brian E. Krapf,* for appellant.

*Simon, Booth, Cook & Cardillo, Robert R. Cook, Lawrence E. Newlin,* for appellee.

---

[8] (Citations and punctuation omitted.) *Frazier*, supra, 219 Ga. App. at 770 (1).

[9] Id. See *Spivey v. Spivey*, 236 Ga. 725 (1) (225 SE2d 288) (1976) ("[n]o case has been cited and none has been found where one party denied the existence of an actual contract of marriage and the jury finding in favor of such party has been set aside, no matter how compelling the evidence to the contrary might be").