## A01A1621. FINCH v. DASGUPTA.
### (555 SE2d 22)

MILLER, Judge.

Billie Ann Finch appeals from the trial court's grant of summary judgment against her on her complaint for common law marriage,[1] breach of promise to marry, and fraud. She contends that summary judgment was improper because (1) there was some evidence of a common law marriage and (2) the trial court failed to specifically address her claims of breach of promise to marry and fraud. We discern no error and affirm.

Construed in favor of Finch, the evidence shows that Finch began dating Gautam Dasgupta in 1988. In September of that year, Dasgupta asked Finch to marry him, but Finch stated that she was not ready to get married at that time and declined. When Finch was ready to get married a few years later, she left a note in one of Dasgupta's shoes asking him to marry her, but Dasgupta did not say that he would marry her. In 1992, Finch again expressed her desire to get married and asked Dasgupta for an engagement ring for Christmas, but Dasgupta instead gave her a ring box containing a check for $3,000 to pay off a loan and insisted that he needed to "get [his] priorities straight" before he could marry her. Finch again asked Dasgupta to marry her in 1998, and again he refused.

Throughout their ten-year relationship, Finch stayed at Dasgupta's home for several nights of each week. She always maintained her own separate residence and separate financial accounts, however. After she turned down his offer in 1988, Dasgupta never asked Finch to marry him again or told Finch that they would get married, never introduced her to anyone as his wife, and never signed any contract or other document representing that Finch was indeed his wife.

---

[1] We note that under OCGA § 19-3-1.1, "[n]o common-law marriage shall be entered into in this state on or after January 1, 1997." This case, however, concerns a common law marriage that allegedly took place prior to January 1, 1997, and such "[o]therwise valid common-law marriages entered into prior to January 1, 1997, shall not be affected by [OCGA § 19-3-1.1] and shall continue to be recognized in this state."

Although Finch and Dasgupta sometimes took vacations together, Finch concedes that Dasgupta never, at any time, represented that he and Finch were married.

Finch and Dasgupta's relationship ended in 1998 after Finch suspected that Dasgupta was cheating on her. She sued Dasgupta, alleging that they had a common law marriage, that he breached his promise to marry her, and that he committed fraud by leading her to believe that they would someday be married when in reality he had no intention of marrying her. The trial court granted summary judgment to Dasgupta, holding that "[t]he evidence [was] plain, palpable and undisputed that there was never an express agreement entered into by the parties to live together as man and wife."

1. In reviewing the grant or denial of summary judgment, we conduct a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law.[2] In addition, "[w]hen [an] alleged marriage is unlicensed and nonceremonial, the burden is on the proponent to prove that a common-law marriage existed."[3] The proponent of the marriage must demonstrate that the parties (1) were able to contract, (2) agreed to live together as man and wife, and (3) consummated the agreement.[4]

The undisputed evidence reveals that no common law marriage existed in this case. By Finch's own testimony, she and Dasgupta never agreed to live together as man and wife. Finch maintained her own residence throughout the course of her relationship with Dasgupta, and she rejected Dasgupta's only marriage proposal in 1988. Dasgupta never represented that he and Finch were married, or even that they would get married. Even if Dasgupta intended to marry Finch at some point in the future, "[a]n agreement to marry in the future is insufficient to establish a common law marriage. Such a bond can be established under OCGA § 19-3-1 only by an express, present marriage contract."[5] Finch's claim of common law marriage is entirely without merit, and the trial court properly granted summary judgment to Dasgupta on this issue.

2. Finch further contends that the trial court erred by failing to specifically mention her claims for breach of promise to marry and fraud in its summary judgment order when it entered judgment on

---

[2] *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755 (500 SE2d 638) (1998).

[3] (Citation and footnote omitted.) *Wright v. Goss*, 229 Ga. App. 393, 394 (1) (494 SE2d 23) (1997).

[4] Id.; see also OCGA § 19-3-1.

[5] (Footnote omitted.) *In re Estate of Wilson*, 236 Ga. App. 496 (1) (512 SE2d 383) (1999).

the entire complaint. Since these additional claims are also without merit, we discern no error.

(a) "Breach of promise to marry is a common law contract action."[6] By the very nature of the action, there must be an actual promise to marry and acceptance of that promise before one can be held liable for a breach.[7] Since it is undisputed that Finch rejected Dasgupta's only marriage proposal, there was never any accepted promise upon which Finch could base a claim for breach of promise to marry. Summary judgment to Dasgupta was warranted on this issue.

(b) With respect to her claim for fraud, Finch relies on *Perthus v. Paul*[8] to contend that Dasgupta committed fraud by falsely leading her to believe that he loved her and intended to marry her. Finch's reliance on *Perthus* is misguided, however, as it does not support her argument and is distinguishable from the instant case.

In *Perthus*, the defendant falsely represented to the plaintiff that she was divorced.[9] Relying on this misrepresentation about defendant's marital status and her promise that she would marry him, plaintiff moved from his home and left his job to be with defendant.[10] Under these circumstances, this court held that plaintiff had stated a cause of action for fraud.[11] In the instant case, however, no misrepresentation was ever made about Dasgupta's marital status, as both he and Finch were single. Nor did Dasgupta promise to marry Finch. Contrary to Finch's contentions, *Perthus* does not create a fraud cause of action for all jilted lovers, but only for those who reasonably rely to their detriment upon misrepresentations by another about their marital status and about their intent to marry.[12] Finch has not stated any cognizable action for fraud, and the trial court properly granted summary judgment to Dasgupta.

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED SEPTEMBER 24, 2001.

*Alan B. Fecteau*, for appellant.
*Fortson, Bentley & Griffin, J. Edward Allen, Jr., Augustus T. Curtis*, for appellee.

---

[6] (Citations omitted.) *Thorpe v. Collins*, 245 Ga. 77, 78 (1) (263 SE2d 115) (1980).
[7] See, e.g., *Leonard v. Owen*, 125 Ga. App. 5, 6 (2) (186 SE2d 506) (1971).
[8] 81 Ga. App. 133 (58 SE2d 190) (1950).
[9] Id. at 134.
[10] Id.
[11] Id. at 136.
[12] See also *Field v. Massey*, 232 Ga. App. 524 (502 SE2d 349) (1998).