A03A0248. IN RE ESTATE OF LEGRAND.
(576 SE2d 54)

BLACKBURN, Chief Judge.

Following the probate court's determination that he was not the common-law husband of the decedent, Myrtle Jane LeGrand, and was not entitled to year's support, Thomas Royst Sutley appeals, arguing that the probate court improperly weighed the conflicting evidence and applied the wrong legal standard when considering it. We find otherwise on both issues and affirm.

Whether a man and a woman have entered into a common-law marriage is a question of fact. *Edwards v. Edwards*.[1] "When the alleged marriage is unlicensed and nonceremonial, the burden is on the proponent to prove that a common-law marriage existed. In order for a common law marriage to come into existence, the parties must be able to contract, must agree to live together as man and wife, and must consummate the agreement." (Punctuation omitted.) *In re*

---

[1] *Edwards v. Edwards*, 188 Ga. App. 821, 822 (1) (374 SE2d 791) (1988).

*Estate of Wilson.*[2] All three of these elements as set forth in OCGA § 19-3-1 must be met simultaneously.[3] *Brown v. Carr.*[4]

To obtain year's support, Sutley had to prove the existence of the purported marriage. While it is undisputed that LeGrand and Sutley had the capacity to contract, the evidence was disputed as to whether they agreed to live together as man and wife and consummated such an agreement. When considered in the light most favorable to the probate court's findings, the evidence shows that LeGrand and Sutley had a long-term relationship as landlord and tenant. In 1977, Sutley began boarding at LeGrand's home and paying rent to her monthly for a room. From 1977 until Sutley's failing health forced him to relocate to a nursing home in 1997, Sutley continued to pay rent.

Whether their relationship went beyond landlord/tenant and, in fact, constituted a common-law marriage entitled to legal recognition created a disputed issue of fact. Thirteen witnesses testified at the hearing. Without question, their collective testimony established that LeGrand and Sutley were good friends, true companions, and cared deeply for each other. But, no family members or friends were able to confirm that Sutley and LeGrand both considered themselves married and held themselves out as husband and wife. At most, family and friends attested to a deep and abiding loving relationship.

For example, although LeGrand's son-in-law, Alexander Estfan, testified, "[w]ell, I thought that their relationship was similar to a married couple," he admitted that he had never heard either say that they were married. A former daughter-in-law of LeGrand testified that in the late 1980s, Sutley had confided to her that "I'm more than a roommate here. . . . [W]e live as man and wife. I pay half of everything . . . and then I keep paying." But this same witness, Alice Crane, admitted that she never heard LeGrand say they were living as man and wife or that they were married.

Similarly, LeGrand's daughter, Janie Estfan, attested to the pair's obvious love for each other. Estfan even described how Sutley had told her that he felt that her mother "was more than a wife to him." But, notwithstanding Estfan's opinion that "[t]hey were an ideal couple," Estfan admitted her mother never said they were married. In fact, Estfan testified that neither Sutley nor her mother had ever used the "m" word.

Even Sutley did not attest to the existence of a mutual agree-

---

[2] *In re Estate of Wilson*, 236 Ga. App. 496 (1) (512 SE2d 383) (1999).

[3] By the enactment of OCGA § 19-3-1.1, the legislature foreclosed recognition of any common-law marriages entered into in Georgia on or after January 1, 1997. The alleged marriage at issue here predates that change.

[4] *Brown v. Carr*, 198 Ga. App. 567, 568 (402 SE2d 296) (1991).

ment to live together as man and wife. When asked by his lawyer whether he thought of LeGrand as his wife and was actually married to her, Sutley responded in the affirmative. But, Sutley, by then in his nineties, was unable to provide any details to corroborate his assertion. When repeatedly asked when they had married, Sutley became unresponsive. Moreover, he admitted having continued to pay rent to LeGrand each month.

"Marriage may be inferred from proof of cohabitation and that the parties held themselves out to the world as husband and wife, and such proof may be made by general repute among neighbors and others in a position to know the facts." (Punctuation omitted.) *Simeonides v. Zervis.*[5] Here, although Sutley claimed they were married and testified that he thought of LeGrand as his wife, no evidence showed that LeGrand held herself out as his spouse or ever told anyone that she was married to Sutley. On the contrary, the record contains overwhelming evidence that LeGrand was a widow with absolutely no intention of marrying anyone, including Sutley. Even in her last will and testament, LeGrand proclaimed, "I was married twice, but both of my husbands have predeceased me." When LeGrand executed her will on May 11, 1995, Sutley was living at her home and still continuing to pay rent.

Georgia Peeks, a long-time next-door neighbor, disputed the existence of any marriage. Peeks testified that she saw LeGrand every day and that LeGrand never held herself out to be married to Sutley. Rather, according to Peeks, LeGrand had told her she had no desire or intention to marry Sutley. Peeks voiced certainty that LeGrand did not consider herself to be his wife.

LeGrand's own sister testified that she never heard either her sister or Sutley say they were married. Other witnesses, including LeGrand's two sons, four granddaughters, and a daughter-in-law, testified that LeGrand never said that she and Sutley were married. Instead, family members repeatedly described how LeGrand had emphatically stated she would never marry again. Other evidence showed that she and Sutley kept separate bedrooms.

Diane Waddle, LeGrand's daughter-in-law, testified that when Sutley was first introduced to her in 1991, it was as LeGrand's friend and her boarder. Waddle recalled an incident at the nursing home where Sutley was confined, during which LeGrand had denied being Sutley's wife to the nursing staff. Waddle testified that she then asked her mother-in-law whether she had ever even considered marrying him. According to Waddle, LeGrand responded, "Well, years

[5]. *Simeonides v. Zervis*, 127 Ga. App. 506, 508 (3) (194 SE2d 324) (1972).

ago whenever he came in to start boarding with me, it was mentioned."

1. Sutley contends that the probate court erred by improperly determining that his direct testimony and that of the disinterested witnesses did not establish by a preponderance of evidence the existence of his common-law marriage. He claims that the only evidence to contradict the finding of a marriage was by "either parties in interest or relatives thereof."[6]

When viewed in a light to support the probate court's factual determination, the record contains evidence to support the finding that Sutley failed to sustain his burden of proving that he and LeGrand had a common-law marriage. As the probate court aptly summarized:

> While they clearly lived under the same roof, shared chores and spent holidays together, as evidenced by testimony of family members and family photographs, there was no independent evidence to support a conclusion that there was a mutual agreement or contract between Petitioner and the decedent to be husband and wife, an essential element under OCGA § 19-3-1.

Since the record contains evidence to support this finding by the probate court, we will not disturb it. See *Brown*, supra at 568.

Moreover, entitlement to the right of year's support is a matter of status that vests upon the death of a spouse. *Wigley v. Hambrick.*[7] But, here, since there was no marriage, as a matter of law, Sutley was not entitled to a year's support. See *Holmes v. Holmes.*[8]

2. Sutley contends that the intermediate standard of proof, clear and convincing evidence, applies to cases affecting fundamental rights and marriage is a fundamental right. He argues that the appellees had the burden of providing clear and convincing evidence to rebut the presumption of "marriage from connubial habit" because this presumption is "one of the strongest known to the law" and "is to be repelled only by clear evidence."

This argument misconstrues the law. Sutley, as proponent, had the burden of proving by a preponderance of evidence that a marriage existed at common law. See *Baynes v. Baynes.*[9] That burden never shifted. In addition, Sutley's claim overlooks the obvious — that the record contains no proof that he and the decedent entered

---

[6] Under the terms of her mother's will, Janie Estfan was disinherited.

[7] *Wigley v. Hambrick*, 193 Ga. App. 903, 905 (4) (389 SE2d 763) (1989).

[8] *Holmes v. Holmes*, 232 Ga. App. 434, 435 (1) (502 SE2d 294) (1998).

[9] *Baynes v. Baynes*, 219 Ga. App. 848, 849 (1) (467 SE2d 195) (1996).

into a present marriage contract as required by OCGA § 19-3-1. See *Finch v. Dasgupta*.[10] Absent proof of that marriage contract, connubial habit or sexual intimacy, even if proven, would lack legal significance. See *Holmes*, supra.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED DECEMBER 31, 2002.

*Paul S. Suda*, for appellant.
*Warren Josephson*, for appellee.

