A05A0083. IN RE ESTATE OF LOVE.
(618 SE2d 97)

MIKELL, Judge.

In this will dispute, a jury determined that Darryl Arnold was the common law husband of Barbara J. Love by virtue of a marriage entered into prior to January 1, 1997,[1] and remained so until the time of her death. Bertrand Love, the decedent's son, appeals the judgment entered on the verdict. In addition to challenging the sufficiency

---

[1] Pursuant to OCGA § 19-3-1.1, "[n]o common-law marriage shall be entered into in this state on or after January 1, 1997." This case, however, concerns a common law marriage that allegedly took place prior to January 1, 1997. The statute provides that "[o]therwise valid common-law marriages entered into prior to January 1, 1997, shall not be affected by this Code section and shall continue to be recognized in this state."

of the evidence, Love argues that the trial court committed several errors by: (1) admitting certain medical records; (2) refusing to charge the jury that a common law marriage may not be partial or periodic; (3) denying appellant's motion in limine to exclude evidence regarding the relationship between Arnold and the decedent after January 1, 1997; (4) refusing to permit a rebuttal witness to testify; and (5) allowing Arnold's counsel to question the appellant about his criminal history. For the reasons stated below, we affirm.

"[I]f there is any evidence to support [the finding of a common law marriage], an appellate court should so construe the evidence to uphold the verdict."[2] So construed, the evidence shows that Arnold and the decedent met in or about 1991. Arnold testified that the decedent was widowed when they met and that he was divorced; that they moved in together in 1992; that they operated the decedent's business together; that they had a sexual relationship and shared a bedroom; that in August 1994, they entered an agreement to be married and the decedent accepted a ring from him; and that she wore the ring daily until her last hospitalization. Arnold introduced several pictures of the decedent wearing the ring, and recalled that two of them were taken in 1996 and 1997, respectively. Arnold also testified that he gave the decedent greeting cards, which referred to her as his wife.

Arnold and the decedent opened a joint checking account on July 17, 1998, obtained certificates of deposit in 1998, and opened additional accounts at a different financial institution in 2002. They shared household expenses, and both contributed monies to the joint accounts. They also opened separate IRAs, designating each other as sole beneficiaries. Arnold explained that they did not indicate that they were married on the IRAs because they did not have the legal documentation to that effect, which was the same reason that they did not file joint tax returns. The beneficiary designations remained unchanged at the decedent's death.

Arnold further testified that he and the decedent incurred debt together. In 1998, they purchased a utility vehicle. In 1999, they purchased a lot, which was titled in both of their names, on which they planned to build their dream home. Arnold introduced several exhibits that were related to that real estate transaction. They hired an architect to draw the plans for the new home and obtained an estimate, dated May 11, 2000, which was introduced into evidence. Because the lot could not accommodate the home they planned to

---

[2] (Citation omitted.) *Waddill v. Waddill*, 143 Ga. App. 806, 809 (5) (240 SE2d 129) (1977).

build, Arnold and the decedent found another lot. They did not purchase the second lot because the decedent became ill in December 2001.

Arnold testified that during the decedent's final hospital stay, which began on April 3, 2003, he signed the consent forms for her treatment, which were admitted into evidence. On one occasion, however, the appellant signed the consent form because the hospital would not accept Arnold's common law status. Arnold was with the decedent when she died on June 15, 2003.

Numerous witnesses testified regarding the relationship between Arnold and the decedent. Paul Haws, a friend and business associate of the decedent, testified that in 1994, the decedent introduced Arnold to him over the telephone as her husband. Betty Johnson, Arnold and the decedent's housekeeper, testified that the decedent referred to Arnold as her husband. Nicole Witherspoon, the social worker responsible for formulating the decedent's home care plan, testified that in April 2003, the decedent told her that Arnold was her husband of seven years. One of the nurses who cared for the decedent testified that the appellant told her that he considered Arnold to be his mother's husband.

Appellant offered evidence to show that the decedent and Arnold had not entered a common law marriage. The decedent's sister, Joanne Walker, testified that the decedent said that she would not marry Arnold because she thought he was being unfaithful to her; and that the decedent authored their sister's obituary in which she referred to Arnold as her "special friend." Further, Love testified that on a warranty deed executed on December 3, 1999, the decedent referred to herself as a single female. Love also offered evidence that in medical records dated January 2001, she referred to Arnold as her fiancé; that in 1998 and 2003, she indicated that she was widowed on medical forms; and that in 2003, she listed Arnold as "relative number 1" on a medical form but gave him the designation of "other."

1. Love argues that the jury verdict must be set aside because there was no evidence presented to support it. We have held that whether a woman and a man have entered into a common law marriage is a question of fact, and the factfinder's determination shall not be disturbed on appeal if there is any evidence to support it.[3] Because there was evidence to support the verdict, we reject Love's argument.

---

[3] *Beals v. Beals*, 203 Ga. App. 81, 82 (1) (416 SE2d 301) (1992).

> When the alleged marriage is unlicensed and nonceremonial, the burden is on the proponent to prove that a common-law marriage existed. In order for a common law marriage to come into existence, the parties must be able to contract, must agree to live together as man and wife, and must consummate the agreement. All three of these elements as set forth in OCGA § 19-3-1 must be met simultaneously.[4]

Evidence tending to show the existence of a common law marriage may include "such circumstances as the act of living together as man and wife, holding themselves out to the world as such, and repute in the vicinity and among neighbors and visitors that they are such, and indeed all such facts as usually accompany the marriage relation and indicate the factum of marriage."[5] The jury is the final arbiter of credibility and conflicts.[6] While the evidence here is conflicting, the jury was authorized to conclude that a common law marriage existed.[7] We reject Love's argument that because there were documents reflecting that the decedent and Arnold did not hold themselves out as married, there was no common law marriage.[8]

2. Love argues that the trial court erroneously admitted medical records that referred to Arnold as the decedent's husband because the status of their relationship was not pertinent to her medical diagnosis. The trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard.[9] We find no abuse here.

"On an issue of marriage vel non the declarations of the parties that they were or were not married, made ante litem motam, are admissible evidence of the fact declared."[10] Additionally, we find that the medical records constitute original evidence, pursuant to OCGA

---

[4] (Citations, punctuation and footnotes omitted.) *In re Estate of LeGrand*, 259 Ga. App. 67-68 (576 SE2d 54) (2002).

[5] (Citation and punctuation omitted.) *Wright v. Goss*, 229 Ga. App. 393, 394 (1) (494 SE2d 23) (1997).

[6] *Waddill*, supra.

[7] See *Foskey v. Foskey*, 257 Ga. 736 (1) (363 SE2d 547) (1988).

[8] See *Wright*, supra at 395 (1) ("It is not true that if there is any undisputed evidence that they held themselves out as unmarried (loan applications, tax returns, etc.), then as a matter of law that precludes the element that they must agree to live together as husband and wife. A person might say on government and business documents that he or she is single, in order to reduce taxes or obtain welfare or for some other personal purpose such as not wanting certain persons to know they are married, and actually be common law married.").

[9] *Rome Healthcare v. Peach Healthcare System*, 264 Ga. App. 265, 270 (4) (590 SE2d 235) (2003).

[10] (Citations omitted.) *Whigby v. Burnham*, 135 Ga. 584, 586 (69 SE 1114) (1911). "Ante litem motam" means when the declarant had no motive to distort the truth. Black's Law Dictionary (5th ed. 1979), p. 84.

§ 24-3-2, which provides that "[w]hen, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence." The documents about which appellant now complains were not admitted for the purpose of proving that Arnold was the decedent's husband, but to explain Arnold and the decedent's conduct, which was relevant to the issue of whether they held themselves out as married. Moreover, even if the records should have been excluded on hearsay grounds, they were simply cumulative of other testimony in the case. Thus, this error fails.

3. Next, Love argues that the trial court erred by refusing to charge the jury that a common law marriage may not be partial or periodic and that Arnold was required to prove that his illicit relationship with the decedent had ended and a marriage contract had been entered into. "In reviewing a claim of error for refusal to charge, we must determine whether the request was entirely correct and accurate, adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge."[11] Because we find that the substance of the requested charges was covered in the correct instructions of the court, we find no error.[12]

The trial court refused Love's request to charge no. 27, which included the statement that the relationship could not be partial or periodic. However, the trial court charged the jury as follows:

> To constitute a valid marriage in this state, there must be —
> number one; parties able to contract. Number two; an actual
> contract and number three; consummation according to law.
> By common law and the law of this state, a mutual agree-
> ment to be husband and wife by parties able to contract
> followed by cohabitation is recognized as a valid marriage,
> as long as the marriage was established prior to January 1,
> 1997. . . . For purposes of proving common law marriage, the
> fact that the parties agreed to live together as man and wife
> and consummated the agreement may be inferred from proof
> of cohabitation that the parties held themselves out to the
> world as husband and wife and such proof may be made by

---

[11] (Citation omitted.) *Coleman v. Fortner*, 260 Ga. App. 373, 375 (1) (b) (579 SE2d 792) (2003).

[12] See *Waddill*, supra at 808 (4).

general repute among neighbors and others in a position to know the facts.

This charge was in accordance with the law of this state.[13]

The statement that the relationship cannot be partial or periodic relates to the consummation of the marriage agreement evidenced by the parties' cohabitation.[14] In *Wright*,[15] we stated, "[t]he fact of cohabitation is treated as essential, if not the main factor in establishing in this State a common-law marriage. Of particular import is that 'such legal relationship cannot be partial or periodic.'"[16] In *Franklin v. Franklin*,[17] a case relied upon by the appellant, we stated that it would be unlawful to agree to live together as husband and wife only periodically.[18] The charge given by the trial court adequately covered the charge requested by the appellant.

Love maintains that the trial court should have charged that Arnold was required to prove the end of his illicit relationship with the decedent and that they subsequently entered into a marriage contract. *Brown v. Brown*,[19] the case upon which Love relies in support of this proposition, states that "[t]his may be done by such circumstances as the act of living together as man and wife, holding themselves out to the world as such, and repute in the vicinity and among neighbors and visitors that they are such, and indeed all such facts as usually accompany the marriage relation and indicate the factum of marriage."[20] The charge given by the trial court adequately covered this principle as well.

4. Next, Love contends that the trial court failed to exclude evidence regarding the relationship between Arnold and the decedent after January 1, 1997, and that this evidence was highly prejudicial and mandates a reversal of the judgment. "[T]he grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care [and a] trial court's ruling [thereon] is reviewed for abuse of discretion."[21] We find no abuse of discretion here.

"Georgia law favors the admission of any relevant evidence, no matter how slight its probative value may be, and, on the balance,

---

[13] See OCGA § 19-3-1.

[14] *Wright*, supra at 395 (1).

[15] Supra.

[16] (Citations and punctuation omitted.) Id. at 394-395 (1).

[17] 253 Ga. App. 147 (558 SE2d 738) (2002).

[18] Id. at 148 (1).

[19] 234 Ga. 300 (215 SE2d 671) (1975).

[20] (Citations and punctuation omitted.) Id. at 302. Accord *Wright*, supra at 394 (1).

[21] (Citations omitted.) *Forsyth County v. Martin*, 279 Ga. 215, 221 (3) (610 SE2d 512) (2005).

evidence of even doubtful relevance should be admitted[,]"[22] and its weight should be left to the jury.[23] The jury was charged that the marriage had to be established prior to January 1, 1997. The special verdict form read: "We, the jury find that Darryl Arnold was the husband of Barbara J. Love by virtue of a common law marriage entered into prior to January 1, 1997[,] and remained her husband until the date of her death, June 15, 2003." The form contemplated the admission of post-January 1, 1997, evidence. The jury obviously concluded that Arnold and the decedent entered into a common law marriage prior to 1997 and that the evidence of their relationship after January 1, 1997, proved that they continued to be married until the decedent's death. We find no error.

5. Love argues that the trial court erred when it refused to permit Tracie Miller to testify as a rebuttal witness to the testimony of Betty Johnson. We disagree.

Johnson, the decedent and Arnold's housekeeper, denied that she told Miller, who had interviewed her a week before trial, that the decedent and Arnold had traveled to Las Vegas to get married and that the decedent got "cold feet." Love attempted to call Miller to testify to her conversation with Johnson. The trial court excluded Miller from testifying because the rule of sequestration had been invoked, and Miller had been present in the courtroom during the trial. "[D]ecisions regarding exceptions to the rule of sequestration in order to facilitate the orderly presentation of evidence are a matter within the discretion of the trial court."[24] Though the trial court had the authority to allow Miller to testify,[25] the fact that it chose not to do so did not amount to an abuse of discretion.[26]

6. In his final enumeration of error, Love argues that the trial court erroneously permitted Arnold's counsel to question him about his criminal history without laying a proper foundation. The record shows that Love was asked about his arrest history with no objection from counsel until Love stated that he was arrested for illegal dumping, at which point the trial court sustained the objection. Love was then asked, without objection, if he had ever been convicted of a

---

[22] (Citation and footnote omitted.) *Wolf Camera v. Royter*, 253 Ga. App. 254, 261 (4) (558 SE2d 797) (2002).

[23] *Hand v. Pettitt*, 258 Ga. App. 170, 173 (1) (a) (573 SE2d 421) (2002).

[24] (Citation omitted.) *TDS Constr. v. Burke Co.*, 206 Ga. App. 223, 225 (3) (425 SE2d 359) (1992).

[25] See generally *Meadows v. Barker*, 241 Ga. App. 753, 755 (3) (526 SE2d 643) (2000) ("[A] violation of the rule of sequestration affects only a witness' credibility and does not render a witness incompetent to testify.") (footnote omitted).

[26] See *Ransum v. Chattooga County Bd. of Ed.*, 144 Ga. App. 783, 784 (2) (242 SE2d 374) (1978) (no abuse of discretion in excluding testimony of rebuttal witness because of violation of rule of sequestration).

felony or placed on probation. The trial court instructed counsel that a certified copy of a conviction was required to impeach Love. Arnold's counsel then intimated to the jury that Love was not allowed to carry a firearm because of his criminal history.

Pretermitting whether this line of questioning was appropriate, "[a]n appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful."[27] Appellant has not shown that he suffered any harm as a result of this alleged error. Accordingly, this error, too, fails.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 12, 2005.

*Moore, Ingram, Johnson & Steele, Melissa W. Gilbert, Gary D. Zweifel*, for appellant.

*Russell & Herrera, Dorothea L. Russell, Ann J. Herrera, Dana C. Ashford*, for appellee.

---

[27] (Punctuation and footnote omitted.) *In the Interest of M. T. C.*, 267 Ga. App. 160, 162 (598 SE2d 879) (2004).