**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 10, 2020**

# In the Court of Appeals of Georgia

A19A2254. IN RE ESTATE OF SEAN TIMOTHY O'CONNELL.

REESE, Judge.

Sean M. O'Connell and Joel O'Connell (the "Appellees") filed a petition for letters of administration after their father, Sean T. O'Connell (the "Decedent"), died intestate. Kim Garrett (the "Appellant") filed a caveat to the petition, alleging that she was the Decedent's surviving spouse because she and the Decedent had entered into a common-law marriage prior to January 1, 1997.[1] After a bench trial, the probate court entered a final order, finding, inter alia, that the Appellant and the Decedent were not married. The Appellant filed a motion for new trial, which the probate court

---

[1] See OCGA § 19-3-1.1 ("No common-law marriage shall be entered into in this state on or after January 1, 1997. Otherwise valid common-law marriages entered into prior to January 1, 1997, shall not be affected by this Code section and shall continue to be recognized in this state.").

denied. The Appellant seeks review of both orders, arguing that the probate court based its judgment on several clearly erroneous findings of fact. For the reasons set forth infra, we affirm.

Construed in favor of the judgment,[2] the evidence presented at the bench trial shows the following facts. The Decedent finalized his divorce from his first wife approximately two years before he met the Appellant in 1993. The Appellant had already separated from her husband, and she and the Decedent began to date after she finalized her divorce in February 1995.

The Decedent, a master electrician, began bringing the Appellant to his job sites. She became involved in the business and befriended some of the contractors with whom the Decedent worked on various projects.

The Appellant testified that, by the end of 1995, they were a "100 percent committed couple" and that, in April 1996, they privately exchanged rings at a waterfall in Helen. The two promised that they would love each other forever, and the ring represented their commitment: "It was the circle that wouldn't be broken."

A contractor friend of the couple, Michael Rothman, testified that in 1996 he noticed the couple wearing "wedding rings." When he asked them about it, "they said

---

[2] See *Braswell v. Benton*, 351 Ga. App. 372 (830 SE2d 758) (2019).

2

it was a small ceremony, they didn't tell anyone. [A]fter [Rothman] got over [his] anger[ about not having been invited, he] went out and bought a nice bottle of champagne[.]"

According to the Appellant, she and her children moved in with the Decedent after the school year ended, in June or July 1996. The couple lived together in several different homes between 1996 and 2013 when the house (which was solely in the Decedent's name) was sold at foreclosure. At that point, they separated: the Appellant purchased a home in Cartersville, and the Decedent stayed with family and later in a mobile home on land he owned.

Over the next few years, the Decedent had romantic relationships with several different women, including "one that was serious enough to introduce to [the Appellees.]" According to the Appellant, she was "seeing" someone from September 2013 to January 2014, meaning they "did dinner and movies[,]" but she and the Appellant continued to spend holidays and birthdays together.

The Decedent passed away on August 17, 2017. The Appellant testified that, the night before the Decedent's death, she and the Decedent had dinner together. Although they did not reconcile, they "discussed [the Decedent] moving into the house with [the Appellant] in January and starting fresh."

3

At the conclusion of the bench trial, the probate court announced its ruling, and issued a final order a few days later. The court found that the Appellant had failed to carry her burden, "[b]ased on the evidence presented, oral testimony from numerous witnesses and abundant documentary evidence and arguments from counsel." The court continued:

> In order for a common law marriage to come into existence, the parties must[, inter alia,] agree to live together as husband and wife[.] The intent of the parties is paramount. [The Appellant] herself testified that both she and the Decedent each had experienced very difficult divorce proceedings with their former spouses. Both agreed that neither one of them wished to experience that again if their relationship soured. Therefore, they agreed to just live with each other, but not as husband and wife. The evidence was conflicting during the time they were together. They separated at times then would reunite, again living with each other. While apart they would have relationships with other people. Documentary evidence was conflicting as well. In the end all the essential elements had to exist simultaneously for [the Appellant] to carry her burden and she did not. In the end, the parties sometimes acted like a married couple but all along knowing they did not want to be married to each other.

The probate court thus found that the Appellant was not the Decedent's surviving spouse and that the Appellees were his only heirs at law. This appeal followed.

4

As the party asserting the existence of a common-law marriage, [the Appellant] must establish its existence by a preponderance of the evidence. Moreover, an order finding that no common-law marriage existed must be upheld on appeal if there is any evidence to support the finding. In order for a common-law marriage to come into existence, the parties must be able to contract, must agree to live together as [husband] and wife, and must consummate the agreement. All three of these elements as set forth in OCGA § 19-3-1 must be met simultaneously. Further, a legal marital relationship cannot be partial or periodic.[3]

"[W]here findings of fact are 'clearly erroneous,' or wholly unsupported by the evidence, they may be set aside. And [i]f the court's judgment is based upon a stated fact for which there is no evidence, it should be reversed."[4] With these guiding principles in mind, we turn now to the Appellant's claims of error.

1. The Appellant argues that the judgment should be reversed because it was based on the probate court's clearly erroneous finding that she testified that both she and the decedent had experienced very difficult divorces from their former spouses.

---

[3] *In re Estate of Smith*, 298 Ga. App. 201, 202 (679 SE2d 760) (2009) (punctuation and footnotes omitted).

[4] *Adamson v. Trust Co. Bank*, 155 Ga. App. 646, 648 (271 SE2d 899) (1980) (citation and punctuation omitted).

5

The issue in this case is whether the parties agreed to live together as husband and wife prior to January 1, 1997. A review of the transcript of the bench trial shows that the Appellant did not testify about the Decedent's divorce or about anything regarding her own divorce beyond the date it was finalized.

Even assuming that the probate court's finding was clear error, it does not follow that the court's ruling rested on this finding.[5] The probate court had already stated its conclusion "[b]ased on the evidence presented, including oral testimony from numerous witnesses and abundant documentary evidence and arguments from counsel[.]" A logical reading of the order indicates that the probate court based its conclusion on the record as a whole.

Further, there is evidence to support the trial court's finding. The Appellant testified: "We didn't need to [sign a legal document]. That piece of paper had caused both of us grief." She explained further: "My marriage was not a good one, and his was definitely not a good one. Signing your name on a dotted line did not make you a committed — it doesn't take a name on paper[.] It's how you feel towards one

_____

[5] See *Boatright v. Glynn County School Dist.*, 315 Ga. App. 468, 473 (3) (726 SE2d 591) (2012).

another and your commitment to one another and to take care of one another, which we both tried to do."

In addition to the Appellant's own testimony, Janet Pritchard, the Decedent's sister, testified that, early on in the Decedent's and the Appellant's relationship, Pritchard had asked him if the couple was married or if they had plans to get married. The Decedent responded that "he never planned to get married again[.]" Thus, applying the "any evidence" standard of review, we find no reversible error.[6]

2. The Appellant contends that, "[b]uilding on [the Appellant's] nonexistent testimony that the couple had each experienced difficult divorce proceedings," the probate court clearly erred in finding that the couple agreed that neither of them wished to experience that again if their relationship soured. For the reasons stated in Division 1, supra, we find no reversible error.

3. The Appellant argues that the probate court also clearly erred in its next finding: that the couple had agreed to live with each other, but not as husband and wife. The Appellant contends that the evidence showed that she and the Decedent had made an express commitment to each other, and that the probate court based its

---

[6] See *In re Estate of Love*, 274 Ga. App. 316, 318 (1) (618 SE2d 97) (2005).

decision on the incorrect legal theory that a couple's decision not to get a marriage license meant they lacked the necessary intent.

The probate court, sitting as the trier of fact, was "the final arbiter of credibility and conflicts."[7] "Thus, although the evidence is in conflict, there exists some evidence to support the [probate] court's finding of the nonexistence of a common-law marriage, and we will not disturb that finding on appeal."[8] For example, the Decedent's sister and brother testified that the Decedent never referred to the Appellant as his wife, never mentioned the trip to Helen, and on several occasions specifically denied that they were married.[9] Further, the testimony that the Appellant and the Decedent had stated their intent never to remarry was evidence to support the trial court's finding that the Appellant and the Decedent lacked the requisite intent.

_____

[7] *Love*, 274 Ga. App. at 319 (1).

[8] *Smith*, 298 Ga. App. at 204 (punctuation and footnote omitted).

[9] See *Baynes v. Baynes*, 219 Ga. App. 848, 849 (1) (467 SE2d 195) (1996) (holding that, to the extent there was direct evidence of an "actual contract" under OCGA § 19-3-1, the trial court was not bound by the evidence where the evidence was in conflict and the trial court's findings were supported by the evidence); id. at 850 (2) ("Of particular significance to the trial court was the evidence that in all the fifteen years the two lived together, the deceased never told his daughter, his mother, his brother, or his best friend that he was married to appellant.").

4. The Appellant also argues that the probate court clearly erred in finding that the Appellant and the Decedent had separated at times, had relationships with other people while apart, and then reunited and resumed living together.

The probate court found that the Appellant and the Decedent "sometimes acted like a married couple but all along knowing that they did not want to be married to each other." The probate court noted the conflicting documentary evidence and found that the couple had "separated at times then would reunite[,] again living with each other. While apart they would have relationships with other people."

As detailed above, the record shows that the Appellant and the Decedent physically separated in 2013 after the foreclosure of the home and then began dating other people. However, there was evidence that, prior to 2013, the Decedent began staying out late many nights drinking with a neighbor. According to Appellee Sean M. O'Connell's testimony, "being his adult son that lived a couple hours away, it felt to me, as far as I can recollect, [that] by 2011 or 2012, at the latest, [the Decedent] was spending a lot of time at my house on weekends or at Uncle Mike's, or he would be at the neighbors['] and just really avoiding the big issues that were in front of him [at home]."

Because there is evidence in the record to support the probate court's conclusion that the couple "sometimes" acted like a married couple and that "all along" they lacked the intent to marry each other, we must uphold the probate court's finding.[10]

5. In a related argument, the Appellant contends that the probate court clearly erred in its finding that the couple sometimes acted married and all along knew they did not want to be married to each other. The Appellant stresses that the couple had to have formed the requite intent before January 1, 1997.[11]

The record shows that the Decedent's ex-wife filed a petition to modify the visitation of their two sons. In the petition, the ex-wife alleged in paragraph 4 that the Decedent "resides . . . with [the Appellant], with whom he is openly engaged in a meretricious relationship in the presence of the children." The Decedent filed a verified answer in September 1996, "admit[ting] paragraph 4, except it is denied that a meretricious relationship exists." The Appellant contends that the Decedent "was, in effect, declaring that he was married under the law."

---

[10] See *In the Interest of D. C.*, 279 Ga. App. 889, 890 (1) (632 SE2d 744) (2006).

[11] See n. 1, supra.

This evidence does not demonstrate that the probate court clearly erred. As the probate court found, the documentary evidence was conflicting. For example, in July 1996, the Decedent filed against his ex-wife a petition for contempt, in which he referred to the Appellant as his "girlfriend[.]" As noted above, the Appellant testified that she and the Decedent had exchanged rings in April 1996 and had moved in together after the school year ended, in June or July of that year. Because there was evidence to support the probate court's finding, we will not disturb it on appeal.[12]

6. Based on our holdings in Divisions 1 through 5, supra, we need not address the Appellant's remaining claim of error that the probate court erroneously denied her motion for new trial.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[12] See *Smith*, 298 Ga. App. at 204.